THE SOUTHERN KANSAS RAILWAY COMPANY v. WILL-
IAM A. MOORE.

MASTER AND SERVANT — *Knowledge of Dangerous Work* — *Assumption of Risk* — *No Cause of Action.*   Where the fellow-servants or co-employés of another employé are not guilty of any negligence, and such other employé, knowing the dangerous character of the work which he is required to do, undertakes the same, although unwillingly, for fear of losing his employment, and is injured, he has no cause of action against the master.

*Error from Cowley District Court.*

ACTION by *Moore* against the *Railway Company* to recover for damages for bodily injuries.   Judgment for the plaintiff for $824, February 25, 1889.   The defendant *Company* brings the case here.   The facts appear in the opinion.

*Geo. R. Peck, A. A. Hurd, Robert Dunlap,* and *O. J. Wood,* for plaintiff in error:

1. The plaintiff voluntarily and without objection under-took to perform the work in the manner it was done, with full knowledge of the danger and risk.   He therefore as-sumed the risk of danger.   The defendant was not negligent under the circumstances, and plaintiff cannot recover.

Under the special findings of the jury, there was no negli-gence in any other of the employés, and indeed there was no evidence in the case to justify the finding of negligence in any fellow-servant.   The remaining question, therefore, is whether the defendant was negligent in respect to the mat-ters found by the jury, and whether the plaintiff did not assume the risk in any event.   If the nature of plaintiff's employment was not changed and he continued to do the work in a different manner, he assumed the risks incident thereto.   The master has generally the right to determine for himself in what way he thinks it advisable to conduct his business, and he cannot be held guilty of negligence towards a servant who has knowledge of the danger, in asking the

servant to perform the work in that manner. In *Wormell v. Maine Cent. Rly. Co.*, 10 Atl. Rep. 51, it is said :

"Every employer has the right to judge for himself in what manner he will carry on his business as between himself and those whom he employs, and the servant having knowledge of the circumstances must judge for himself whether he will enter his service, or having entered, whether he will remain."

This is not like the case of requiring one of immature years to perform duties more dangerous than those for which he was employed. It such a case it may well be held that the master is negligent in requiring one of immature years to perform more dangerous services without special instructions. In the present case, however, the plaintiff voluntarily, without objection, undertook to perform the service, and as to him the maxim "*Volenti non fit injuria*" must be held to apply. See *Membery v. Great Western Rly. Co.*, Law Rep. 14, App. Cas. 179. Much that is said in the case of *Leary v. B. & A. Rld. Co.*, 139 Mass. 580, cited with approval by this court in *A. T. & S. F. Rld. Co. v. Schroeder*, 47 Kas. 315, is pertinent here.

In the case at bar, the plaintiff voluntarily, without protest or complaint, undertook to perform the service as it was being done, and therefore voluntarily assumed the danger or risks which were known to him and which were so plain. The case of *Leary v. B. & A. Rld. Co.*, supra, is followed and cited with approval in *Russell v. Tillotson*, 140 Mass. 201. The same principle is reiterated in the case of *Wormell v. Maine Cent. Rly. Co.*, 10 Atl. Rep. 49 and 54, and a number of authorities are cited sustaining the proposition. Upon the same point, see, also, *Cole v. C. & N. W. Rly. Co.*, 37 N. W. Rep. 84, 90, and 91, and authorities cited; also *Smith v. Union & St. P. Rly. Co.*, 43 id. 968. See *Cummings v. Collins*, 61 Mo. 521; *Goodenow v. Walpole Emery Mills*, 15 N. E. Rep. 576; *Sullivan v. Manufacturing Co.*, 113 Mass. 396; *G. H. & S. A. Rld. Co. v. Drew*, 59 Tex. 10; *May v. O. & Q. Rly. Co.*, 10 Ont. Rep. 70; *Keen v. Detroit &c. Rolling Mill*, 33 N. W.

Rep. 400; *Houston & Tex. Cent. Rly. Co. v. Fowler*, 8 Am. & Eng. Rld. Cases, 504; *Galveston &c. Rld. Co. v. Lempe*, 11 id. 201.

2. The court erred in instructing the jury. While the court committed error in laying down the rule of comparative negligence, and permitted the plaintiff to recover, even though the jury should find that his negligence, though slight, contributed to the injury, it also erred in giving another instruction, to which his attention was specifically directed at the time. The following instruction, excepted to by the defendant, was given by the court:

"If from all this testimony you believe that they had been in the habit of doing this business in a safer and more prudent manner before and after the time than they were doing at this time, then that would be sufficient evidence for you to find negligence upon their part."

This instruction was erroneous and misleading, because it informs the jury that, if the company had been in the habit of doing business in a safer and more prudent manner both before and after the accident than they were doing at the time, the jury would be warranted in finding the defendant negligent, although the way in which the work was being done at the time was reasonably prudent. The way the work was being done at the time of the accident was not necessarily negligent. The plaintiff, if he had used reasonable care and had looked out for himself, could have avoided the accident, and while perhaps there may have been a safer way of doing the work or requiring it to be done, yet the company was not negligent in failing to adopt the safest way, or in failing to require the work to be done in the safest manner. As to the servant, it is only obliged in any event to exercise reasonable care and diligence in the discharge of the duties incumbent upon it. With respect to its machinery, it is only required to use reasonable care and diligence to provide reasonably safe machinery. Better machinery may be in use and better machinery may be used, but still it is not incumbent upon the employer to adopt the safest and best, as to an

employé. Such a duty only devolves in favor of a passenger, where the highest degree of care is to be exercised by a carrier. Now, the jury would infer from the instruction given by the court, that although the way in which the work was required to be done at the time of the accident may have been reasonably prudent, yet they should find the defendant liable to the plaintiff and guilty of negligence, if they believed that there was a safer method of performing the work. So it will be seen that such an instruction would naturally be calculated to mislead the jury, if they were disposed to be fair and unprejudiced in this matter, as they ought to have been.

*Peckham & Peckham,* for defendant in error:

The general verdict and special findings are in entire harmony, are within the issues presented by the pleadings, and fully sustain the judgment of the district court.

It is claimed that the court misdirected the jury in laying down to them the rule as to comparative negligence of plaintiff and defendant. Even if this were true, it is immaterial for the purposes of this case. The defendant below, with the usual object sought to be attained, has caused to be submitted to the jury certain special questions. This practice is oft-times a boomerang, and the answers to questions may return to plague the questioner who is unwilling to rely upon the general verdict. The jury in this case, in answer to such questions, find specific acts of negligence on the part of defendant, and also find that the plaintiff was not guilty of contributory negligence, slight or otherwise. By these findings, which in this record must be taken to be fully supported by the evidence, plaintiff in error is concluded, and it is immaterial whether the trial court instructed correctly or incorrectly upon the doctrine of comparative negligence. There are no negligences to compare. In thus treating the question of the correctness of the instructions of the court upon the proposition referred to, we do not, however, wish to be understood to admit that the instructions of the court are erro-

neous, but maintain, to the contrary thereof, that the rule as to comparative negligence is fairly stated, taking the instruction as a whole, and not by picking out detached sentences.

It is further complained that there is error in the giving of a certain instruction, as follows:

"If, from all this testimony, you believe that they had been in the habit of doing this business in a safer and more prudent manner before and after the time than they were doing it at this time, then that would be sufficient evidence for you to find negligence upon their part. If you are satisfied that they were not at this time doing this in a way that ordinary prudence and care would require a railroad company to do similar work, then you would be justified in finding them guilty of negligence."

Counsel for plaintiff in error choose to detach and quote only the first clause of this paragraph. We give the entire paragraph as it is found in the instructions given, and contend that, as applied to the facts shown in evidence, it is neither erroneous nor misleading. It is argued that, "as to the servant, it (the railroad company) is only obliged in any event to exercise reasonable care and diligence in the discharge of the duties incumbent upon it. With respect to its machinery, it is only required to use reasonable care and diligence to provide reasonably safe machinery. Better machinery may be in use, but still it is not incumbent to adopt the safest and best as to an employé."

This enunciation of the doctrine of the duties of a railroad company is evasive and misleading as an argument against the instruction complained of, taken in connection with the undisputed facts in this case. The business in which plaintiff was employed is confessedly hazardous, even with the best and safest appliances, used with the greatest care. Can it be reasonably contended that, with reasonably safe appliances lying ready at hand, the defendant company may neglect and refuse to make use of the same for the protection and safety of its employés? The doctrine that the company, as to employés, is not bound to produce the best and safest appliances

for carrying on a business which at its best is dangerous to life and limb, if sound law as applied to any state of facts, (and we are not inclined to accede to the doctrine,) can at most only be true in the sense that the company is not bound to purchase the best and safest, but may purchase and use such as are reasonably safe. Having, however, purchased, and having ready at hand proper and reasonably safe appliances, it cannot refrain from making use thereof without being guilty of negligence, and gross negligence as well.

The manner of doing the work referred to in the instruction was the use or the non-use of an empty flat car for the men engaged in dragging the steel rails from one car to another to pass onto after placing the rails upon the car to which they were being transferred. If they had such empty car to pass on to, they were without danger from falling rails. If such empty car were not supplied, there was great danger of injury from such falling rails. Empty flat cars were at hand in the yard of the company. Both before and after the time of the injuries complained of, such empty flat cars were ordinarily and usually placed in position suitable for the men to escape upon while doing this kind of work. On this particular day, and in loading the particular car at which plaintiff was engaged, such empty car was not supplied, but plaintiff was compelled, after hauling a rail upon the car upon which it was being loaded, to pass or escape, not upon an empty car provided for that purpose, but upon a flat car upon which was being loaded and upon which was falling other steel rails being placed thereon by another gang of men. To compel work to be done in this way was not only negligence, but a reckless and wanton disregard of the safety of employés. The only justification attempted by the evidence was to show that the company was in especial haste on that particular day to forward rails to the front for purposes of construction, and would not take the time to set in a vacant flat car in proper position. The legal justification by counsel is, that employés have no rights which the corporation — through its petty officers, its foreman and bosses — is bound

to respect; and that, if the employé does not like it, he is a free American citizen, and has the glorious privilege of refusing to work, and may hunt safer work with more humane employers. We submit that the instruction, as applied to the facts before the jury, is neither misleading, prejudicial, nor erroneous. The court might well have gone further, and added that this evidence was not only "sufficient to find negligence upon the part of the defendant," but that it was the duty of the jury to so find.

The opinion of the court was delivered by

HORTON, C. J.: It is contended upon the part of the railway company that Moore is not entitled to recover, because the special findings of the jury show that there was no negligence in any of the other employés of the company; further, because Moore voluntarily and without objection undertook to perform the work in which he was engaged, in the manner it was done, with full knowledge of all danger and risk, and that he was guilty of contributory negligence. Moore, in his petition, alleged that on December 8, 1886, the railway company had a material yard at Arkansas City, in this state; that he was employed there in loading and unloading upon railroad cars steel rails, etc.; that the company negligently failed to have a sufficient number of competent laborers to perform the work required; that it employed unskillful and incompetent laborers; that it failed to provide a sufficient number of cars to enable the work to be carried on with safety; that the foreman of the company negligently omitted to give proper supervision in the loading and unloading of steel rails, etc., and that the employés of the railway company, other than Moore, carelessly and negligently performed their work and labor, so that a steel rail weighing 560 pounds was thrown and fell with great force upon the foot and ankle of Moore, greatly injuring the same. The answer contained a general denial, and alleged that the negligence was the result of inevitable accident and want of care on the part of Moore.

From the evidence of Moore, it appeared that some two-

months prior to the accident he was employed by the
railway company in its material yard at Arkansas City, this
material yard being used as a place to receive and forward
materials along the line in the construction of the railroad.
Most of the time he was engaged in loading and unloading
steel rails from one car to another, but when not engaged in
this, he, with other men, was required to do whatever other
work they might be put to.    Rails would come into this yard
loaded on cars, and would have to be unloaded and placed
upon flat cars to be taken out on the line of the road.    Prior
to the accident, the general method adopted was as follows :
Two flat cars adjoining each other would be placed next to
the car which contained the rails intended to be unloaded.
What was known as a "dolly," consisting of a round iron eight
inches through and resting in a frame, would be placed at the
end of the flat car adjoining the stock car, or other car con-
taining the rails.    Two or three men would lift an end of
the rail from the stock car and place it on this dolly.    A
hook attached to a rope would be hooked in the hole of the
bolt near the end of the rail, and six men would take hold of
this rope and pull the rail along until the other end reached
the dolly.    This rope was about 10 feet long.    The rails
were about the length of a flat car, that is, 30 feet, so that
in doing this work it would be necessary to run upon the ad-
joining flat car, and when the rail was pulled nearly off the
dolly, one end of it would rest upon the flat car and the
other end upon the dolly.    A man at the dolly, with a steel
fork, would turn the rail over and off the dolly, letting it
drop upon the bottom of the flat car.    This dolly was some
8 or 10 inches in height.    On the day of the accident, two
empty flat cars were run together.    At the north and south
ends of these two cars, two other cars, one being a coal car
and the other a stock car, both loaded with rails, were placed.
A gang of men was set to work to unload the rails in the
same manner from the stock car onto the flat car adjoining it.
Moore, with a gang of men, consisting of the same number
as had always been employed, was set to work to unload the

steel rails from the coal car onto the flat car adjoining it. The difference in the method of doing the work on the day in question from the way in which it had been done prior thereto was, that the respective gangs would have to run upon the other cars which were being loaded; that is, Moore and a gang would have to go a short distance on the adjoining flat car, which was at the same time being loaded by another gang with steel rails, and the other gang in their turn, would have to go upon the flat car which was being loaded by the plaintiff and his gang. After they had been working some little time, Moore, with a gang, started to run a rail onto the flat car, and had proceeded onto the other car, just at the time when the man at the dolly on the other car was turning the rail over in order to let it drop from the dolly. The rail dropped off the dolly, rolled, and struck plaintiff's foot and nearly cut his big toe off at the front joint, and also smashed the toe next to it, and otherwise injured his foot. The men on the other car had gone back, and the man at the dolly was in the act of throwing a rail over, when Moore got on the car. He was near the middle of the car when it fell on him.

Moore testified, among other things, that—

"Ques. When you were standing over there, some of the parties, whose business it was to do that, turned the rail over? Ans. We were not standing, we were running.

"Q. How far had you got when this rail rolled onto you? A. I don't know; I was running; when it fell upon my foot I didn't think about measuring the distance; I was far enough so I saw the north end of their rail was upon the car, was down on the car; the south end was up I suppose eight inches, maybe ten—I judge eight inches; that was far enough so that when it fell over it fell and kind of rolled and the ball struck my ankle here; the rail was that high where I was.

"Q. As high as your ankle? A. Yes, sir.

"Q. You knew how these rails run out there? A. Yes, sir.

"Q. You had been working at that for some time? A. Yes, sir.

"Q. You knew all about it, how they shifted the cars to load on these flats? A. Yes, sir.

"Q. You knew they came out upon the car, and one end would be down on the car and the other on the dolly? A. Yes, sir.

"Q. You knew when that was done some one would go and turn it over to its place? A. I knew it would be done; I knew it should have been done before we got there. When we got our rail started we could n't stop and they knew it, consequently they should not have turned their rail until we got stopped and got off.

"Q. Did you see them there before you started with your rail? A. I suppose I did.

"Q. Then why did you start with your rail the time you saw them there? A. Why does a man do anything working for a foreman when he tells you to do it?

"Q. Was there a foreman there? Was George Brown there? A. If he was not, he should have been.

"Q. Did n't you state a while ago that Brown was not there when you received your injuries? A. No, sir; I said I was not certain whether he was right there at the time or not.

"Q. I will ask you, if you saw them there before you started, which you say you did, why did you start that rail the time you did until they got away? A. I was not running the steel gang myself.

"Q. You were running the steel? A. I was helping.

"Q. You were one that helped to run the steel; when you saw them at the place they were putting the rail down, why did you start when they were supposed to be at the other end when you started? A. I do n't know why; if I did n't, somebody else would; if I had refused to go with the rest of the gang they would have got somebody in my place.

"Q. You knew they would turn the steel over the way they did? A. I knew they would do it; I thought they would wait until we got out of the way of it.

"Q. When was it they turned the steel over; how far on the car did you get? A. I do n't know just how far I had got; one end of the rail was on the car, the other end, I suppose, was eight inches up; the dolly, I expect, was near the end of the rail, within three or four feet; the rails are 30 feet long; I got far enough so that when the rail fell the ball struck me on the ankle."

The jury made the following special findings of fact:

"Q. Was the defendant guilty of negligence? If so, in what did it consist? State fully. A. Yes; by unloading on curve; by lack of flat car, and absence of boss.

"Q. Were any of the employés of the defendant guilty of negligence? If so, who, and in what did it consist? A. No."

The special findings of fact of the jury show that none of the employés of the railway company were guilty of negligence. Of course, if none of the employés of the company were guilty of negligence, Moore is not entitled to any recovery. A railway company, in the operation of its road, and in carrying on its work, can only act through its agents or employés. (*Insurance Co. v. Munger*, ante, p. 178.) If the agents or employés were not negligent, the company was not negligent. But if, as claimed by Moore, the jury intended to only find that none of his fellow-servants or co-employés were negligent, it is equally conclusive, considering the statements of Moore, testified to by him upon the trial, that no liability was established against the company. This court has decided several times that —

"While it is the duty of an employer, whether a railroad company or other corporation or person, to make the work of his or its employés as safe as is reasonably practicable, yet when the employé, with full knowledge of all the dangers incident to or connected with the employment as it is conducted, accepts the employment, or, having accepted the same, continues in it with such full knowledge, and without any promise on the part of the employer, or any reason to expect on the part of the employé, that the employment will be made less dangerous, the employé assumes all the risk and hazards of the employment." (*A. T. & S. F. Rld. Co. v. Schroeder*, 47 Kas. 315; *Rush v. Mo. Pac. Rly. Co.*, 36 id. 129; *Clark v. Mo. Pac. Rly. Co.*, 48 id. 654; 29 Pac. Rep. 1133.)

Moore knew that the steel rails were being unloaded on a curve; he knew of the lack of a flat car and of the absence of the boss; he, therefore, had full knowledge of all the risks and hazards of his employment. As the jury found that the employés of the railway company, or, as this finding is inter-

St. L. & S. F. Rly. Co. v. Kinman.

preted by the plaintiff below, the co-employés of the company, were not guilty of any negligence, if Moore, knowing the dangerous character of the work, undertook the same, although unwillingly, for fear of losing his employment, and was injured, he has no cause of action. (See cases above cited, and *Leary v. B. & A. Rld. Co.,* 139 Mass. 580; *Coyne v. U. P. Rly. Co.,* 133 U. S. 370; *Aerkfetz v. Humphreys,* 145 id. 418.)

In view of the findings of the jury and the evidence of Moore, the judgment of the district court must be reversed, and the cause remanded, with direction to the court below to render judgment for the railway company.

All the Justices concurring.