No. 21,285.

SARAH J. BRIGGS, as Administratrix, etc., *Appellant*, v. THE
UNION PACIFIC RAILROAD COMPANY, *Appellee.*

### SYLLABUS BY THE COURT.

ASSUMPTION OF RISK—*Federal Employers' Liability Act—Death of Fire-
man—Falling from Moving Train.* The engineer of a freight train
started the train on an interstate journey while the fireman was in a
lunch room eating a lunch. The fireman came out of the lunch room,
and seeing the train in motion, climbed on top of a car to go forward
to his place in the engine cab. While going forward over the car
tops he stumbled and fell between cars and was killed. He was an
experienced and competent fireman, and knew, or should have per-
ceived, the dangers which he would normally and necessarily en-
counter in passing over the train. *Held,* under the federal employers'
liability act he assumed the risk.

Appeal from Shawnee district court, division No. 1;
ALSTON W. DANA, judge. Opinion filed February 9, 1918.
Affirmed.

*Joseph G. Waters,* and *John C. Waters,* both of Topeka, for
the appellant.

*R. W. Blair, C. A. Magaw, T. M. Lillard,* and *A. M. Hamble-
ton,* all of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages resulting from
death of a fireman of one of the defendant's engines. A gen-
eral verdict was returned for the plaintiff. With the general
verdict the jury returned special findings of fact. Judgment
was entered for the defendant on the findings of fact, and the
plaintiff appeals.

The deceased was fireman of an engine drawing an east-
bound interstate train. Near midnight the train reached To-
peka, and the engineer stopped the engine about fifty feet west
of Kansas avenue, a street adjoining the defendant's depot on
the west. The engineer and fireman left the engine and went
to a lunch room some ninety feet east of Kansas avenue, where
each one ordered a lunch. When the engineer had finished his
lunch he left the lunch room, went to his engine, and put the

train in motion. The train moved the distance to the lunch room quite slowly, the speed being not more than two miles per hour when the lunch room was passed. After that the speed was increased to about seven miles per hour, but it was necessary to stop for the crossing of the Santa Fe railroad, about thirty-five car lengths away, and the engine did stop from twenty to twenty-five car lengths from the lunch room. The engineer whistled for the Santa Fe crossing, and again put the train in motion. He testified that he expected the fireman to catch the side of a car, ride to the Santa Fe crossing, and then come into the engine from the ground, or else come over the tops of the cars to the engine, according to a general practice followed for the fourteen years he had been working on the defendant's road. About the time the engine was over the Santa Fe crossing the engineer received a stop signal, stopped the train, and was informed the fireman had been killed. The fireman had come out of the lunch room, and seeing the train in motion, had climbed upon it, and while going over the tops of the cars toward the engine, had stumbled and fallen between cars. There was evidence that before going to the lunch room the engineer told the fireman there was time for lunch, but they would need to hurry, and that before leaving the lunch room the engineer said to the fireman, "Let's go." In response to this suggestion, or command, of his superior, the fireman made a jovial remark. An ex-engineer, without a regular run since 1906, testified that it was the fireman's duty to be in the cab before the train started, but he further testified that the engineer must wait until the fireman comes, and has no business to start his engine until the fireman is in the cab. The findings of fact, which, as the case is presented, establish all the facts which are material, follow:

"No. 1. Did Kyle, the engineer of the train, start the train on its journey without Briggs, the fireman, being in the cab, and without said engineer knowing where Briggs was? Answer: Yes.

"No. 2. Did Briggs come out of the lunch room, and seeing his train moving to the front, get upon the train and go to the front of the cab, and while so doing did he not stumble and fall between the cars and was killed? Answer: Yes.

"No. 3. Was it the duty of Briggs as fireman to get upon the train and go over the car tops that he might regain his place in the cab? Answer: Yes.

"No. 4. Was the engineer negligent in starting his train without fireman being in the cab of the engine? Answer: Yes.

"No. 5. Did not the act of the engineer in starting his train without Briggs being in the cab make it necessary for Briggs, in the discharge of his duty, to get upon the moving train and go over it to his place of duty? Answer: Yes.

"No. 6. Would the death of Briggs have happened if the engineer had not started the train until Briggs was in the cab? Answer: No.

. . . . . . . . . . . . . . .

"No. 1. Was Earl H. Briggs at the time of his death an experienced and competent fireman? Answer: Yes.

"No. 2. Did Earl H. Briggs know, or in the use of ordinary care should have known, the risks and dangers which he would normally and necessarily encounter in passing over the train from which he stumbled and fell? Answer: Yes.

No. 3. If Earl H. Briggs had not stumbled would he have fallen from the train? Answer: We don't know.

"No. 4. Was the defendant guilty of any negligence toward Earl H. Briggs? Answer: Yes.

"No. 5. If you answer the last question Yes, then state fully of what such negligence consisted. Answer: Starting his train without his fireman."

The district court held that findings 1 and 2 of the second series established the pleaded defense of assumed risk.

The action was prosecuted under the federal employers' liability act, and must be determined by the federal law, as interpreted by the federal court of last resort. The case upon which the plaintiff relies for recovery (*Ches. & Ohio Ry. v. De Atley,* 241 U. S. 310) illustrates as well as any which might be chosen the views of the supreme court of the United States respecting the subject of assumed risk under the federal employers' liability act. The head brakeman of a train was sent forward to obtain some necessary information. The train followed him, and it was his duty to board it while it was in motion. It was the engineer's duty to operate the train at such speed the brakeman could board it without undue peril, and the brakeman had a right to assume that it was so operated. While the train was moving at the rate of twelve miles per hour the brakeman attempted to board it, was unsuccessful, and was injured. The case was treated as one presenting the question of assumed risk.

"Whether the risk was an extraordinary risk depended upon whether the speed of the train was greater than plaintiff reasonably might have

anticipated; and this rested upon the same considerations that were determinative of the question of the engineer's negligence. If the jury should find, as in fact they did find, that the speed of the train was unduly great, so that the risk of boarding the engine was an extraordinary risk, the question whether plaintiff assumed it then depended upon whether he was aware that the speed was excessive and appreciated the extraordinary danger, or, if not, then upon whether the undue speed and the consequent danger to him were so obvious that an ordinarily prudent person in his situation would have realized and appreciated them." (p. 317.)

The court of appeals of the state of Kentucky had held that the brakeman had not assumed the risk of injury, because his situation and opportunities for observation were such that he could not judge the speed of the train. Upon this subject the opinion reads:

"The court of appeals reasoned that plaintiff's duties required him to be upon the passing train; that if he failed to board it he would be left behind; that he had a right to assume the engineer would run the train at a speed that would enable him to get on in safety; that he was facing the train, which was going directly toward him; that, as a matter of common knowledge, one standing in that position cannot form an accurate judgment of its speed until it comes quite near to him; and that his opportunity to observe the speed was limited to the brief space of time that elapsed between the passing of the front end of the engine and the cab, where it was his purpose to get on; and the court determined that, under such circumstances, 'it is well-nigh impossible to tell the difference between a rate of from four to six miles an hour, when an ordinarily prudent brakeman might get on with reasonable safety, and a rate of from ten to twelve miles an hour, when it would be dangerous for him to do so,' and that 'all the circumstances tend to show that knowledge of the speed of the train came to him so suddenly and unexpectedly that he did not have an opportunity to realize and appreciate the danger of getting on.' Conceding the force of the reasoning, we are bound to say that, in our opinion, it cannot be said, as matter of law, to be so incontrovertible that reasonable minds might not differ about the conclusion that should be reached. We therefore hold that the question of assumption of risk was one proper for submission to the jury. . . ." (p. 317.)

In the case under decision the jury have found specifically that the fireman did know, or that ordinary prudence would have perceived, the dangers normally incident to passing over the train from which he fell.

In the De Atley case it was held that the federal employers' liability act abrogated the fellow-servant rule, but in other respects left unimpaired the common-law defense of assumed

risk, except in cases covered by some statute enacted for the safety of employees. The risks assumed are the ordinary risks incident to the employment. Those risks, however, are not all that may be assumed. Extraordinary risks created by negligence of the employer may be assumed, if the employee be aware of them, or if they are so obvious that any reasonable person would be aware of them and appreciate them.

"According to our decisions, the settled rule is, not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents had execised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them." (p. 315.)

This rule was applied to the facts of the De Atley case in the following manner (*italics added*) :

"Plaintiff had the right to presume that the engineer would exercise reasonable care for his safety, and cannot be held to have assumed the risk attributable to the operation of the train at an unusually high and dangerous rate of speed, *until made aware of the danger, unless the speed and the consequent danger were so obvious that an ordinarily careful person in his situation would have observed the one and appreciated the other.*" (p. 314.)

In the De Atley case the negligence which created an extraordinary hazard was the negligence of the engineer in operating the train at too great a rate of speed. In this case the negligence which created the extraordinary hazard consisted in starting the train before the fireman was in his place (findings 4 and 5, second series). There was no allegation, no proof, and no finding that the train was operated at too great a rate of speed, or that the speed of the train was negligently increased, or that the cars were jerked or bumped, or that any negligence whatever, of omission or commission, occurred after the train was started. The danger, therefore, was the normal danger attending the way which the fireman chose of reaching his place on the engine of the moving train. This danger was perfectly obvious to any one.

The fireman had a right to assume that the engine would not be started until he was in the engine cab. It was started, however, without him. When he came out of the lunch room

the engine and a number of cars had already gone by, and the train was going forward. He was immediately and manifestly confronted with all the difficulties and dangers to be encountered in reaching his place on the engine. It would be fatuous to say he was not aware of them, and it would be an impeachment of the mental capacity of a competent man to say he did not appreciate them.

The plaintiff says the time was nighttime. It was a night train, and no one was better aware of the darkness than the fireman. The plaintiff says there was smoke. The record does not so show, but if there were smoke, it was a normal incident to the operation of a freight engine. The whole situation created by the engineer's negligence lay before the open eyes of this experienced trainman the moment he stepped out of the lunch room. He voluntarily chose his course, and voluntarily assumed the risk attending his choice.

In order that the decision may not be misapplied in other cases, the court deems it proper to say that if the action were prosecuted under state instead of federal law, the court would not consider assumed risk to be involved unless the jury were to find, either by general verdict under proper instructions, or by special finding, that starting the train without the fireman had become such a general practice that the fireman might have anticipated it in this instance. In this state assumed risk is a matter of contract, and not a matter of prudence of conduct. Only those risks are assumed which naturally and normally attend the employment. Extraordinary risks, created by sporadic acts of negligence on the part of the employer, are not assumed. When an employee has been confronted by such a risk, has acted, and has been injured, the question is whether or not his conduct was, under all the circumstances, reasonably prudent—that is, the question is one of contributory negligence. Assuming in this instance that starting the engine without the fireman was a common practice, the practice was one of the conditions of the employment, and the fireman assumed the risk if he continued to work without protest against it, or if he continued to work after unavailing protest. Assuming, however, that starting the engine without the fireman was an unusual occurrence, the question was whether or not a person of the fireman's qualifications and experience,

and resting under his duty to reach his engine, might, under all the circumstances, with reasonable prudence attempt to do so by going over the tops of the cars. The question would be a jury question, and if the fireman were found to be negligent, the fact of contributory negligence on his part would not of necessity entirely defeat recovery. The case being governed by federal law, the court has applied that law, as expounded by the supreme court of the United States.

The judgment of the district court is affirmed.