No. 25,156.

GEORGE LIVELY, *Appellant*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellee*.

### SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Injury to Servant—Assumption of Risk.* Assuming that the defendant railway company's negligence was either sufficiently pleaded in plaintiff's petition, or inferable from the facts recited therein, *held,* that the well-pleaded facts, conceded to be true by the demurrer, did not constitute a cause of action under any local statute like the compensation act, and under the federal employer's liability act the doctrine of assumption of risk was applicable thereto and barred a recovery by the plaintiff, and defendant's demurrer to plaintiff's petition was not erroneously sustained.

Appeal from Sheridan district court; CHARLES I. SPARKS, judge. Opinion filed April 5, 1924. Affirmed.

*W. L. Sayers, J. S. Parker,* both of Hill City, and *O. O. Osborn,* of Stockton, for the appellant.

*Luther Burns, John E. DuMars,* both of Topeka, and *W. H. Clark,* of Hoxie, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff, a railway track laborer, was injured in the defendant's service, and brought this action against his employer for damages.

The petition alleged that the defendant railway company was engaged in interstate commerce. Its railway runs through Sherman county. The plaintiff and his foreman were working on the railway track between Goodland and Ruleton in that county when they discovered a broken rail, and it was necessary for both plaintiff and the foreman to remain continuously on duty to flag the many trains which were frequently passing over the track, so that the trains would proceed slowly over the broken rail. The foreman made several unavailing efforts to procure assistance to repair the broken

rail. Both workmen were hungry and thirsty, and the foreman decided to replace the broken rail, and said he had handled such a rail with the assistance of one man and that he and the plaintiff could handle it all right. Plaintiff told the foreman that he had never tried to handle a rail with only one man to assist him. The foreman then directed the plaintiff to assist him to lift a heavy steel rail, which was, as he alleged, unsafe to be handled by two men. The two men then lifted and placed the new rail, and in so doing—

"Plaintiff had to exert himself so strenuously that the exertion caused a rupture or hernia in his right side known as an 'Inguinal Hernia,' which wholly disabled the plaintiff from performing any labor from such date till the date of the filing of this suit. . . . And said injury was caused by the strenuous exertion aforesaid while plaintiff was working in the course of his employment, and the same arose out of his employment. . . .

- "The plaintiff did not know that he was endangering his health in attempting to handle said rail, and believing that said rail could be so handled with safety and that there was danger of the loss of life and property on account of the defective condition of said road, said plaintiff complied with the instruction of the said foreman as aforesaid and thereby suffered the injury complained of.

"Wherefore, plaintiff prays judgment against said defendant for the sum of $1000."

Defendant's demurrer to this cause of action was sustained and plaintiff appeals.

While defendant's negligence was not pleaded in the petition, other than as it might be inferred from the circumstances and facts narrated, the plaintiff's brief gives his theory of the case, and interprets the ruling of the trial court thereon. He says:

"The rail was too heavy for two men to handle, and was unsafe, and plaintiff suffered what is known as an 'Inguinal Hernia' from the strain of lifting and placing the rail. The defendant had neglected to furnish sufficient men to do this job. This, in substance, is the story related in the amended petition. Demurrer by defendant, sustained by the court upon the ground that it was a case of assumption of risk. . . .

"We insist that it was a question for the jury under proper instructions, as to whether or not there was an assumption of risk."

The want of any specific allegations of negligence in plaintiff's petition, and the allegation that the injury was caused "while plaintiff was working in the course of his employment, and the same arose out of his employment," would lead us to infer that the action was originally but somewhat uncertainly intended to be based on the Workmen's Compensation Act. As negligence is not a material ele-

ment in an action for compensation, such a cause of action could have been stated if the defendant was operating its railway under that act, and although that fact was not alleged, it might be presumed. (*Unrine v. Railroad Co.*, 104 Kan. 236, 178 Pac. 614; *Gimple v. Railroad Co.*, 108 Kan. 118, 193 Pac. 1072.) Against this presumption, however, is the fact that the petition does not allege that any written notice of "the time, place and the particulars. thereof" was given to the employer within ten days after the accident, nor is there any allegation that a demand was made for compensation within three months, as the statute requires. Neither is there any allegation touching arbitration or any attempt at arbitration. (R. S. 44-520.) These are essential matters to be pleaded in any action for compensation. It therefore seems that no cause of action was sufficiently stated under the compensation act.

The petition, together with plaintiff's statement in his brief quoted above, would also indicate that, notwithstanding no negligence was squarely pleaded, plaintiff was attempting to state a cause of action against defendant for negligence under the federal employers' liability act (35 U. S. Stat. at L. 65, ch. 149, U. S. Comp. Stat. 1918, § 8657·*et seq.*; Appendix to *Goodyear v. Davis*, 114 Kan. 557, 574, 220 Pac. 282), and plaintiff's brief lends strength to this idea where he informs us that the trial court sustained the defendant's demurrer on the ground that it was a case of assumption of risk.

In the case of *Grand Trunk Ry. Co. v. Lindsay*, 233 U. S. 42, 58 L. ed. 838, it was held:

"A case which, by allegations and proof, is brought within the Federal Employers' liability act . . . is controlled by that act, although its provisions may not have been referred to in express terms in the pleadings or pressed at the trial." (Syl. ¶ 1.)

But the question of assumption of risk under the federal employers' liability act would not necessarily be one for a jury's determination.

In *Burke v. Union Coal & Coke Co.*, 157 Fed. 178, 84 C. C. A. 626, in a case where a miner was killed by an electric shock in a coal mine, Judge Sanborn, in sustaining the trial court in directing a verdict for defendant, said:

"The contention that the servant never assumes the risk of the negligence of the master is untenable in the national courts." (p. 629.)

In the opinion a number of controlling rules laid down in earlier federal cases are approved, including the following:

"A servant by entering or continuing in the employment of a master without complaint, assumes the risks and dangers of the employment which he knows and appreciates, and also those which an ordinarily prudent person of his capacity and intelligence would have known and appreciated in his situation. . . .

"An employee cannot be heard to say that he did not appreciate or realize the danger where the defects are obvious, and the dangers would have been known and appreciated by an ordinarily prudent person of his intelligence and experience in his situation." (628.)

See, also, *Southern Pacific Co. v. Seley*, 152 U. S. 145, 38 L. ed. 391, and Rose's Notes thereto, addenda pp. 876, 877.

Under the federal act a railway employee does assume all the usual risks and likewise the obvious risks incidental to his employment whether he is aware of them or not, except in cases where a violation of some federal statute for the safety of employees contributes to the workman's injury. In *Seaboard Air Line v. Horton*, 233 U. S. 492, 58 L. ed. 1062, 1069, it was said:

"It seems to us that § 4, in eliminating the defense of assumption of risk in the cases indicated, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action. And, taking §§ 3 and 4 together, there is no doubt that Congress recognized the distinction between contributory negligence and assumption of risk; for, while it is declared that neither of these shall avail the carrier in cases where the violation of a statute has contributed to the injury or death of the employee, there is, with respect to cases not in this category, a limitation upon the effect that is to be given to contributory negligence, while no corresponding limitation is imposed upon the defense of assumption of risk—perhaps none was deemed feasible.

"The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employee; and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, *whether he is actually aware of them or not.* But risks of another sort, not naturally incident to the

occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this court. *Choctaw, O. & G. R. Co. v. McDade,* 191 U. S. 64, 68, 48 L. ed. 96, 100, 24 Sup. Ct. Rep. 24, 15 Am. Neg. Rep. 230; *Schlemmer v. Buffalo, R. & P. R. Co.,* 220 U. S. 590, 596, 55 L. ed. 596, 600, 31 Sup. Ct. Rep. 561; *Texas & P. R. Co. v. Harvey,* 228 U. S. 319, 321, 57 L ed. 852, 855, 33 Sup. Ct. Rep. 518; *Gila Valley, G. & N. R. Co. v. Hall,* 232 U. S. 94, 102, *ante,* 521, 524, 34 Sup. Ct. Rep. 229; and cases cited.

"When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty." (See, also, Rose's notes to same case in 58 L. ed. addenda page 1076 *et seq.*)

Even under our local jurisprudence, the assumption of the usual risks of an employment is not ordinarily a jury question. It is a matter of law. (*Rush, Adm'x v. Mo. Pac. Rly. Co.,* 36 Kan. 129, syl. ¶ 2, 12 Pac. 582; *Iron-Works Co. v. Green,* 79 Kan. 588, 100 Pac. 482; *Ernst v. Railroad Co.,* 105 Kan. 706, 185 Pac. 1053.) It is only where the risk is or may be unusual that a jury question can arise; and even in such cases, if the risk though unusual is obvious, such as an ordinarily prudent man could appreciate and understand, the workman who persists in the employment assumes the risk of it and the jury must be so instructed. This sounds rather like a harsh doctrine, and, indeed, it is one which the court has less frequent need nowadays to declare—thanks to our more humane legislation like the Workmen's Compensation Act and kindred statutes—but where the old doctrine of assumption of risk still applies, it is as potent and heartless as ever.

Now, assuming, if we may, that defendant's negligence is to be inferred from the facts alleged in plaintiff's petition, that negligence was in not having enough laborers available to handle the rail. But that fact was perfectly obvious to plaintiff. The fewer men, the heavier the lifting. Was that not perfectly obvious to plaintiff? He was a track laborer, and "one of his duties," as he alleged, "was to assist in lifting and otherwise handling heavy steel rails in connection with repairing said railroad track." So the plaintiff was

familiar with the task, he knew the rails were heavy, and he knew
about how many workmen it would take to handle a rail; and being
a man of ordinary prudence it must have been obvious to him that
there was an increased risk in handling the rail with an insufficient
number of men. Nor is it possible to suppose that the defendant or
its foreman had any greater knowledge than plaintiff of the risks
involved in handling the rail by two men. The foreman said he had
previously handled a rail with the help of one man. But there is
no allegation that the foreman lied about that; he did not make
that statement insincerely or untruthfully. There was no negligence
involved in that statement of the foreman. It is also a part of the
doctrine of assumption of risk that a workman's recourse, when
called upon to perform a task too heavy or too dangerous for his
capacity, is to quit his employment. That sounds harsh, too, but
unless the court is to usurp the functions of the legislature it has
no alternative but to declare the law as it is. In *Iron-Works Co. v.
Green*, 79 Kan. 588, 594, 100 Pac. 482, it was said:

"At the first glance this seems to be a harsh rule, but since men have the
right to accept employment in which both parties know the employee will be
exposed to danger, and the employee has a right to accept greater compen-
sation by reason thereof, neither the courts nor legal writers have been able
to evolve a more equitable rule." (See, also, *S. K. Rly. Co. v. Moore*, 49 Kan.
616, 31 Pac. 138.)

So this plaintiff, knowing as he did how heavy the rail was, and
how many men were needed to handle it, and also knowing better
than his employer—better than anybody else—how strong he was,
how hard he could tax his muscles with safety to himself, continued
in the employment and assumed the risk (*Stenvog v. Minnesota
Transfer Ry. Co.*, 108 Minn. 199, 25 L. R. A., n. s., 362, and note) of
hurting himself with the usual consequences, strain, rupture, hernia,
which flow from overtaxing one's strength. The case of *A. T. & S. F.
Rld. Co. v. Schroeder*, 47 Kan. 315, 27 Pac. 865, was closely anal-
ogous to the one at bar. There the plaintiff and one other workman
were employed to keep a section of the railway track in repair, and
injured himself by lifting a heavy rail. Plaintiff alleged: .

"That the defendant furnished the plaintiff with only one man to assist
him . . . and that he . . . was ordered, . . . to replace certain
rails . . . necessary . . . for the safety of the passengers on the said
line of road, and for the cars running thereon; . . .

"And the plaintiff alleges . . . that the labor required of him by the
defendant was unusual and extra hazardous, and exposed the plaintiff to un-

usual and extra hazardous risks to life and limb and of injury to his health and strength; and that the defendant knew that said labor was unusual and extra hazardous, and demanded the plaintiff to perform such labor and to handle such rails knowing said labor was unusual and extra hazardous, and then and there informed the plaintiff that unless he handled such rails and performed such services that he would be discharged from the services of the company and from the position of foreman, and a man put in his place who would handle such rails of the weight of 560 pounds, with the help as above stated.

"The plaintiff alleges that he objected to performing the work so required, . . . at the special instance and request of the defendant undertook said work and labor, cautiously and prudently guarding against accident and unnecessary exposure . . . . without any fault or negligence on his part whatever, the plaintiff received a severe injury, . . . and that, by reason of said injury he has been made a cripple, and is physically injured for life, to his great damage in the sum of $5,000." (pp. 316-17.)

The court held:

· "While it is the duty of an employer, whether a railroad company or other corporation or person, to make the work of his or its employees as safe as is reasonably practicable, yet when the employee, with full knowledge of all the dangers incident to or connected with the employment as it is conducted, accepts the employment, or, having accepted the same, continues in it with such full knowledge, and without any promise · on the part of the employer, or any reason to expect on the part of the employee, that the employment will be made less dangerous, the employee assumes all the risks and hazards of the employment." (Syl.)

In the opinion, a paragraph of the syllabus to *Leary v. Boston & Albany Railroad,* 139 Mass. 580, is quoted:

"If a servant, of full age and ordinary intelligence, upon being required by his master to perform other duties more dangerous and complicated than those embraced in his original hiring, undertakes the same, knowing their dangerous character, although unwillingly and from fear of losing his employment, and is injured by reason of his ignorance and inexperience, he cannot maintain an action against the master for such injury."

In *Morbach v. Mining Co.,* 53 Kan. 731, 37 Pac. 122, it was said:

"Where the employer and employee are equally competent to judge of the risks and hazards, and both have equal knowledge of the surroundings, the employer cannot be culpably negligent to the employee, although the work may be dangerous and hazardous, and although it might be made safer by the employer if he should choose so to do. (*Rush v. Mo. Pac. Rly. Co.,* 36 Kan. 134; *A. T. & S. F. Rld. Co. v. Schroeder,* 47 id. 315.)" (Syl. ¶ 4.)

In *S. K. Rly. Co. v. Drake,* 53 Kan. 1, 35 Pac. 825, plaintiff and four other workmen were unloading rails from a push car and throwing them on an embankment. The ground was wet and slippery.

Plaintiff lost his balance and was jerked to the ground by a rail which the workmen were throwing. The rail rebounded and caught and crushed plaintiff's fingers. He charged defendant with negligence in failing to provide the requisite number of employees to safely and properly perform the work. A verdict and judgment in plaintiff's favor was set aside. The court said:

"He [plaintiff] rests his case wholly upon the failure of the company to furnish sufficient help. He was an experienced man, of full age, capable of judging what number of employees was necessary to safely do the work, and if there was an insufficient number, he knew that as well as the company knew it. The work was simple, and the risks and dangers were obvious. Possessed of a knowledge of the men employed, the manner in which the work was to be done, and the hazards which it involved, he voluntarily accepted employment, and continued in the service of the company, and must be deemed to have assumed the risks incident to such service. *We only follow in the path of authority in holding that an employee, by voluntarily remaining in the service, with full knowledge of the dangers of the service, assumes the risks of such dangers, and absolves the employer from liability for damages in case of injury.*" (Italics ours, p. 7.)

In *Wallace v. Scott,* 67 Kan. 814, 64 Pac. 615, a workman was injured by a cave-in while digging a trench for the receiver of a railway. A verdict and judgment in his favor were set aside under the rule—

"A servant assumes the ordinary risks of his employment in cases where its dangers are open to common observation and are as fully known to him as to his employer, and where he is as capable of knowing and measuring the dangers of such employment and is not induced to continue in the work by any promise of betterment or indemnity from his employer. In such a case the servant cannot recover from his employer damages for any injury that may come to him in the course of his employment." (Syl.; see, also, *Railway Co. v. Loosley,* 76 Kan. 103, 90 Pac. 990; *Briggs v. Railroad Co.,* 102 Kan. 441, 446, 175 Pac. 105; *Starkweather v. Dunlap,* 103 Kan. 425, 173 Pac. 1122; *McDougall v. Railway Co.,* 106 Kan. 135, 186 Pac. 1028.)

There is practically nothing in common between this case and *Whetzell v. Railway Co.,* 105 Kan. 289, 182 Pac. 409, relied on by appellant for a reversal. In that case negligence was charged and was not left to be inferred or guessed at; the injury was sustained not because of some usual risk pertaining to plaintiff's regular employment in connection with defendant's boilers and pumping plants, but at a task to which he was not accustomed and in a place of danger—which danger was not so obvious that a court could say without consulting a jury that a prudent man would have refused to encounter it.

In 26 Cyc. 1478-1482, it is said:

"Where, on an issue of assumption of risk by a servant who has sustained injuries, the facts are controverted, or such that different inferences may be drawn therefrom, the question as to assumption of risk should be submitted to the jury under proper instructions from the court. On the other hand where the evidence is harmonious and consistent [or where all the well pleaded facts are admitted by demurrer], and the circumstances permit of but one conclusion, the question whether plaintiff assumed the risk becomes one of law for the determination of the court, and a submission of such question by the court to the determination of the jury is of course erroneous."

Whether this case be considered from the angle that no cause of action for negligence was stated, or that the facts alleged disclosed an ordinary case of assumption of risk, a laborious examination of the legal principles involved under the facts alleged in plaintiff's petition discloses no point which would serve as a sufficient basis to justify a reversal of the judgment.

Affirmed.

DAWSON, J. (concurring): I am in accord with all the foregoing, but I hold that no facts constituting actionable negligence on the part of the defendant were pleaded—not for any mere want of skill on the pleader's part, but simply because, read in the light of the federal act and the federal decisions on assumption of risk as well as our own decisions on the same subject, the facts requisite to constitute a case of negligence and defendant's liability therefor did not exist.

JOHNSTON, C. J., and HOPKINS, J., dissent.

HARVEY, J. (dissenting): When the petition alleged that the foreman undertook to remove the broken rail and to put in another with an insufficient number of employees for such a task, it alleged negligence on behalf of the foreman (which is equivalent to negligence of the defendant), for the authorities make it clear that it is the duty of the master to furnish the servant with the number of employees reasonably necessary to perform the task at hand just as it is his duty to furnish reasonably suitable tools and a reasonably safe place to work. The duty of the master in each of these matters has the same basis for its existence.

Under the federal employers' liability act the distinction between the assumption of risk and of contributory negligence is that the former is inherent in the contract of employment, while the latter arises from tort, and the difference in their effect as defenses is

that the former is a complete defense, while the latter only mitigates
the damages. Neither is a defense if the injury was occasioned by
the failure of the employer to comply with a federal statute de-
signed for the safety of employees, such as the safety appliance act.

The defense of assumption of risk as authorized by the federal
employers' liability act means assumption of risk or assumed risk as
these terms were understood at common law and as they have been
defined and applied by the federal courts and such state courts as
have used the terms in the same sense. The term may be defined
thus: by undertaking employment under a contract of employment,
as one of the necessary inherent elements of the contract, the em-
ployee assumes all the risk of injury to his person growing out
of the usual and ordinary dangers of such employment, and this is
true whether or not he knows what are the usual and ordinary
dangers incident to the work to be performed. He also assumes the
risk of the unusual and extraordinary dangers of the employment of
which he has knowledge or which are so obvious that he must have
known them.

This doctrine of assumed risk presupposes that the employer has
performed his duty and has furnished the employee with a safe place
to work, proper tools and a sufficient number of workmen reason-
ably proper and necessary to accomplish the work to be performed.

An employee does not assume the risk when his employer has not
performed these duties. He never assumes risks occasioned by his
master's negligence. Neither does he assume the risks of the un-
usual and extraordinary dangers of his employment of which he has
no knowledge and which are not obviously patent. Nor does he
assume the risk of dangers resulting from his master's failure to
comply with statutes designed for his safety.

Assumption of risk is a defense and like contributory negligence is
usually a question of fact, or a mixed question of law and fact, to be
determined by the jury under proper instructions from the court.
Like any other question of fact to be tried to the jury, it should
never be taken away from the jury by the court and decided as a
matter of law unless the evidence establishing it is so clear that rea-
sonable minds could not reach different conclusions thereon, and
seldom, if ever, should it be passed upon by the court as a question
of law upon the pleadings.

Applying these well established principles to this case, it is clear
that the demurrer should have been overruled.