Alexander Huff, Appellee, v. Illinois Central Railroad Company, Appellant.

324

Opinion filed March 4, 1935.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellant.

BEASLEY & ZULLEY, of East St. Louis, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Appellee, herein referred to as plaintiff, instituted an action in case in the circuit court of St. Clair county against appellant, herein referred to as defendant, to

recover damages for an injury he claims he sustained in an accident on April 12, 1933, while in the employ of defendant as a car repairer.

By the pleadings and stipulations of facts, it is conceded that if plaintiff has a right of recovery, it is under the provisions of the Federal Employers' Liability Act, Cahill's Ill. St. ch. 114, ¶¶ 321–325.

The declaration, which was filed prior to January 1, 1934, contains two counts. The first count charges that the defendant directed the plaintiff to work upon a certain car and "that the defendant then and there negligently, carelessly and improperly failed and refused to furnish plaintiff sufficient help to do the work upon said car, to wit, remove the old drawbars and install new drawbars," and that as a result of not having sufficient help to remove the old drawbars and install new ones, and while doing such work with due care and caution, one of the drawbars weighing, to wit, 350 pounds, fell upon him and he was thereby injured.

The charge of negligence in the second count is that the defendant furnished the plaintiff with a defective, worn and broken jack for the purpose of lifting said old drawbars so that the same could be removed from the car, that the condition was known to the defendant, or could have been known to it by the exercise of reasonable care; and that when the plaintiff, with due care and caution for his own safety, attempted to operate the jack, it tripped and permitted the drawbar to fall in such a way as to jerk the plaintiff causing the injury.

Defendant filed a general issue and a plea of the two-year statute of limitations. On a trial, the jury returned a verdict of $8,000 for plaintiff. After ordering a remittitur of $3,000, the court overruled defendant's motion for a new trial and in arrest of judgment and entered judgment against the defendant for $5,000. Defendant has perfected its appeal to this court.

At the close of plaintiff's evidence and at the conclusion of all the evidence, the defendant moved for a directed verdict. The motion was overruled and the court's ruling is assigned as error.

The evidence shows plaintiff to be about 50 years of age and that he had been in the employ of the defendant in its yards at East St. Louis for more than 10 years prior to the accident, that for two or three years immediately preceding the accident he was employed as a car repairer. On the morning of the accident, the foreman under whom plaintiff was working gave plaintiff a list of the cars upon which he was to work which included the car upon which he was working at the time of the accident. The nature of the work to be done on this car was not disclosed at the time of the assignment. After completing work on another car, he went to the car in question and, upon examination of the inspector's notice, he found that both drawbars were to be removed and new ones installed.

He began work on the drawbar on the front end of the car. It is described as weighing about 350 pounds and is located between two sills that extend the length of the car. It is held in position by tie straps that are fastened at the ends to the sills and other parts of the car. To remove the tie straps, it is necessary to lift the weight of the drawbar from the straps so that the nuts that hold the tie straps may be removed. Defendant furnished plaintiff certain tools with which to work including a .15-ton jack. The jack is described as having a plunger that works up and down in a casing by the operation of a lever. Inside the casing are certain springs and triggers that by the operation of the lever raises or lowers the plunger whichever way it may be set. Plaintiff's testimony is the only evidence as to the accident. He testifies that he placed the jack on a block of wood directly under the drawbar; that he placed a small piece of wood on top of

the plunger and operated the lever, raising the plunger until the weight of the drawbar rested upon it; that he then cut the tie straps' fastenings and made ready to lower the jack which was then carrying the weight of the drawbar; that to accomplish this, he stood at the outer end of the drawbar and placed both hands on it to guide and make it come down straight and worked the lever on the jack with his foot; that each upward and downward movement of the lever would lower the plunger about one-half inch; that he had worked the lever of the jack twice and he found that the drawbar was stuck by reason of a broken spring; that he shook the bar with his hands to release it when the jack tripped letting the plunger fall into the casing and the drawbar dropped out of its position onto the ground, jerking him down on top of it. He testified that when he started working on the car, Steger, his foreman, came along and he said to him, "Mr. Steger, there are two drawbars on this car to come out; will you give me somebody to take them out?" and Mr. Steger said, "You get them out; that car goes out at 2:30. If you can't get them out, I will get somebody who can. It has to go at 2:30." He testified that the usual and approved method of removing a drawbar was to have two men work together on it The evidence does not disclose the particular part that would be taken by each workman. Several witnesses testified for the defendant that it was not the usual practice to have more than one man remove a drawbar.

Plaintiff testified that by reason of the jerk and fall caused by the dropping of the drawbar he suffered pain in his back and stomach, became sick and was forced to discontinue work for a few hours; that he returned that afternoon but was unable to work. His fellow employees testified that he did not make any complaint to them on that date of having received injury. The next day after the accident, plaintiff applied

to the yard foreman for medical aid and reported that he was suffering from an injury he received while working on a truss rod in 1931. On the third day following the accident he appeared before a board of inquiry investigating the nature of the injury and cause of the accident. He received an order for medical aid and was then sent to the defendant's hospital in Chicago for an operation. In all of these interviews, he gave the history of the accident as having occurred in April or May, 1931, and made no reference to any accident occurring in April, 1933. On May 9, following the alleged accident, he was operated on in Chicago for double inguinal hernia. The doctor gave it as his opinion that the condition was of long standing.

Defendant contends that the charge of negligence of insufficient help in the first count is a risk that was assumed by the plaintiff.

In actions brought under the Federal Liability Act the State courts are governed in their construction, application and interpretation of the act by the decisions of the federal courts. *Brant v. Chicago & A. R. Co.,* 294 Ill. 606; *Central Vermont Ry. Co. v. White,* 238 U. S. 507; *Walker v. Iowa Cent. Ry. Co.,* 241 Fed. 395; *Beck v. Baltimore & O. R. Co.,* 244 Ill. App. 441.

Under section 4 of the act, assumed risk is not a defense where the railroad has violated any statute enacted for the purpose of protecting and safeguarding employees and where the violation contributed to the injury but under the facts in this case that section has no application. In this character of cases, assumed risk is a complete defense and the burden of proof on such an issue is on the defendant. *Brant v. Chicago & A. R. Co., supra; Seaboard Air Line Ry. v. Horton,* 233 U. S. 492; *Jacobs v. Southern Ry. Co.,* 241 U. S. 229; *Chicago, R. I. & P. Ry. Co. v. Ward,* 252 U. S. 18.

An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily en-

gages, so far as these are not attributable to the employer's negligence. *Gila Valley, G. & N. Ry. Co. v. Hall*, 232 U. S. 93.

Under the evidence in this case the plaintiff by his years of experience in car repairing had acquired a full knowledge of the weight of the drawbar, its mechanism, the way it was fastened to the car and the tools necessary to be used in removing it. He also knew the various steps that had to be taken to release the tie straps and to lower the bar on to the ground or axle of the car and was fully acquainted with the tools used in such an undertaking. If plaintiff's charge of negligence is based upon the assumption that he did not have sufficient knowledge to do the work or that he was not physically strong enough to do it, then, in either event, he is charged with having assumed the risk incident to insufficient knowledge or lack of strength. His knowledge of his own strength and ability was superior to that of the defendant. *Hallstein v. Pennsylvania R. Co.*, 30 F. (2d) 594; *Lutgen v. Missouri Pac. R. Co.* (Mo. App.), 294 S. W. 444; *Lively v. Chicago, R. I. & P. Ry. Co.*, 115 Kan. 784, 225 Pac. 103; *Hines v. Cox*, 192 Ky. 94, 232 S. W. 373; *Williams v. Kentucky River Power Co.*, 179 Ky. 577, 200 S. W. 946, 10 A. L. R. 1396; *Stenvog v. Minnesota Transfer R. Co.*, 108 Minn. 199, 121 N. W. 903, 25 L. R. A. (N. S.) 362, 17 Ann. Cas. 240.

If the charge of negligence of furnishing insufficient help is to be based upon the assumption that more men would have prevented the drawbar falling, then plaintiff has failed by his proof to show in what way additional help would have prevented it. It is his contention that there should have been one more man and the record is silent as to what part or parts such additional man would take in the work to be performed. The greater part of the drawbar being under the car and being supported in the way that the evidence discloses,

it is not probable that two men could have released the fasteners and lowered the drawbar in any different way than the plaintiff undertook to do it.

Plaintiff contends that the defense of assumed risk is an affirmative defense and must be pleaded by defendant. In *New York, N. H. & H. R. Co. v. Vizvari*, 210 Fed. 118, in considering the necessity and sufficiency of the plea of assumed risk, the court said it is necessary to observe that a difference exists between the assumption of ordinary risk and the assumption of extraordinary risk. If the risk is of the former kind, it is not incumbent on the defense to plead it but if the risk is of the latter kind, the interpretation in some jurisdictions is that if the defendant desires to rely on it, it is a defense he must specially plead.

In this case, the facts upon which plaintiff bases his charge of negligence are the very facts from which the assumption of risks arises and it is our conclusion that the general issue plea traversed it and that it was not necessary for the defendant to plead it specially.

Plaintiff further contends that the question of assumed risk is one of fact for the jury. That is a general rule but when the risk assumed is so obvious and so apparent that the minds of ordinary and prudent men would come to the conclusion that it was a risk, then it becomes a question of law.

Defendant contends that the court erred in not directing a verdict as to the second count for the reason that the burden of proving that the jack was defective and worn and that it caused the injury rested upon the plaintiff and that there is no evidence tending to prove that such was the case or that any negligent act of the defendant was the cause of the drawbar falling.

Plaintiff testified that "From all I could see the jack was all right. When I used it over there to raise it up against the coupler it was all right. In my work as car repairer I use those jacks all the time." There is

no evidence that there was any defect in any of the parts of the mechanism of the jack. Assuming that the jack tripped and the plunger dropped into the casing, this does not of itself establish the fact that the jack was defective or worn. Plaintiff averred that the plunger of the jack dropped because of its defective and worn condition and to maintain that issue, it was necessary for him to furnish evidence tending to prove that the jack was in such condition from which it could be reasonably inferred that the drawbar fell because of such defects. For all that appears in this record, the interior mechanism of the jack may have been in perfect condition and the fall of the drawbar may have been caused by some defect of which the defendant had no knowledge and for which it could not have been charged with knowing.

In *New Orleans & N. E. R. Co. v. Harris,* 247 U. S. 367, 371, 372, the court says: ''The federal courts have long held that where suit is brought against a railroad for injuries to an employee resulting from its negligence, such negligence is an affirmative fact which plaintiff must establish. *Nitro-Glycerine Case,* 15 Wall. 524, 537; *Patton v. Texas & Pacific Ry. Co.,* 179 U. S. 658, 663; *Looney v. Metropolitan R. Co.,* 200 U. S. 480, 487; *Southern Railway-Carolina Division v. Bennett,* 233 U. S. 80, 85.''

In *Patton v. Texas & Pacific Ry. Co., supra,* the court said: ''The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence (*Texas & Pacific Railway v. Barrett,* 166 U. S. 617). Second. That in the latter case it is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of half a

dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs. Third. That while the employer is bound to provide a safe place and safe machinery in which and with which the employee is to work, and while this is a positive duty resting upon him and one which he may not avoid by turning it over to some employee, it is also true that there is no guaranty by the employer that place and machinery shall be absolutely safe.''

In *Moit v. Illinois Cent. R. Co.*, 153 Fed. 354, the plaintiff sought to recover damages for an injury caused by a jack slipping and throwing a load on to him and injuring him. The court in the course of its opinion said that ''there was no presumption of negligence arising from the accident itself, but the liability of the company to its employee must be made out by proof that the company was negligent, and this negligence brought about the resulting injury. If the testimony left the matter uncertain, indicating only that one of a number of things may have brought about the injury, for some of which the company was responsible and for others not, it was not for the jury to guess between these numerous causes and find that the negligence of the company was the real cause, when there was no satisfactory foundation in the testimony for that conclusion.''

Under such a state of the record, it was the duty of the trial court to direct a verdict in the defendant's favor. *Gulf, M. & N. R. Co. v. Wells,* 275 U. S. 455.

Other errors are assigned but from the view we take of this case, it is unnecessary to consider them.

For the reason assigned the judgment of the court is reversed.

*Judgment reversed.*