No. 21,660.

C. J. RASK, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

RAILROAD—*Engineer Violating Rules of Company—Personal Injuries— Contributory Negligence.* A railroad engineer cannot recover damages for injuries sustained by him in a railroad collision brought about by his negligence in violating the rules of his company made for the government of his conduct, where he knew of the physical conditions in time to have prevented the accident if he had obeyed the rules.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed July 6, 1918. Reversed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *Chester Stevens,* of Independence, for the appellant.

*C. E. Pile,* and *L. E. Goodrich,* both of Parsons, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The defendant appeals from a judgment for $15,000, rendered under the federal employers' liability act, in favor of the plaintiff for damages caused by injuries sustained by him in a collision between railroad locomotives while he was employed by the defendant as an engineer on a locomotive pulling an extra freight train.

The defendant argues that the injuries of the plaintiff were caused solely by his own negligence in disobeying the company's rule 93. That rule reads as follows:

"RULE 93. Stations having yard limits will be designated in special rule in time-table. All trains and engines will have the right to work within such yard limits regardless of second- or third-class trains or extras, but will give way as soon as possible upon their approach. All except first-class trains will approach yard limits under control. The responsibility for accidents at such points will rest with the approaching trains."

In response to this argument, the plaintiff contends that his conduct, at the time of the accident, was controlled by rule 99, two paragraphs of which read as follows:

"When a train stops or is delayed under circumstances in which it

may be overtaken by another train, the flagman must go back immediately with stop signals a sufficient distance to insure. full protection. . · . . When a train is backing out of a siding a flagman must go a sufficient distance to the rear to insure protection."

The remainder of rule 99 gives detailed direction for the conduct of trainmen while working under that rule.

The accident occurred at a switch running from the defendant's main line to the Joy Morton Salt Plant about a mile and a half west of the defendant's sidetracks in the city of Hutchinson. The Hutchinson yards of the defendant extended from its station in Hutchinson to a point 2,500 feet west of the switch at the salt plant. At the west end of the yard there was a yard-limits signboard. Whiteside, a station on the defendant's railroad, was situated about three miles west of the salt plant, and about five miles west of the defendant's station at Hutchinson. There was a block signal about a mile west of the defendant's station at Hutchinson, at the crossing of the defendant's road and that of the Missouri Pacific. There was another block signal at Whiteside. That part of the road from Whiteside to the signal at the Missouri Pacific crossing constituted one block. The plaintiff was familiar with all these conditions. The block signals were used to control trains operating through the block. At the time of the accident, a switch engine, with its crew of five men, was working at the salt plant, switching cars to and from the defendant's road to the salt plant. There were cars standing on the main-line track, and the switch engine was on the sidetrack. The plaintiff came with his engine from the west. At Whiteside he had received signals and information that the track was clear in the block between Whiteside and Hutchinson. His train came at 25 or 30 miles an hour.

The Rock Island railroad parallels the defendant's road on the south side. A Rock Island freight train was going west, and passed the train on which the plaintiff was working about 200 feet west of the yard-limits signboard west of the salt plant. The Rock Island engineer noticed the conditions at the salt plant, and saw that there would be an accident unless the plaintiff stopped his train. The Rock Island engineer signalled the plaintiff to stop. The plaintiff saw the signal, cut off the steam on his engine, applied the emergency brakes, and whistled for a clear track. When he passed the yard-limits

signboard, he had reduced his speed to 10 miles an hour. The switch crew saw the plaintiff's train coming from the west. That crew attempted to run the switch engine from the sidetrack onto the main track, and get the cars standing on the latter track and run them onto the sidetrack, but was prevented from so doing by the collision which occurred. A member of the switch crew, when he heard the whistle of the plaintiff's engine, went to the switch stand, changed the switch, but finally left it open. The plaintiff's engine ran into the open switch and collided with the switch engine. The plaintiff's foot was crushed in the accident. This action was brought to recover damages for the injuries sustained by the plaintiff.

The jury made special findings of fact as follows:

"Q. 1. At what rate of speed was plaintiff's train traveling when it entered the yard limits at Hutchinson? A. 1. About ten miles an hour.

"Q. 2. Did the plaintiff enter the yard limits at Hutchinson with his train under control, so that he could stop his train within the distance that the track was seen to be clear? A. 2. Yes.

"Q. 3. If you answer the last question 'yes', state why plaintiff did not stop his train in time to prevent the collision? A. 3. Did n't have time.

"Q. 4. Under the rules of the defendant company, was the switch crew rightfully occupying the main line track and the switch track at the Morton Salt Plant when the accident occurred? A. 4. No.

"Q. 5. If you answer the last question 'no,' state what rule or rules [*that*] were violated by occupying said tracks. A. 5. By not putting out flagman.

"Q. 6. If you find for the plaintiff, in what respect do you find the defendant, its officers, agents, servants or employes negligent. A. 6. By leaving switch open.

"Q. 7. If the plaintiff had had his engine and train under control as required by Rule No. 93, when he entered the yard limits at Hutchinson, on June 28, 1915, would the accident have happened? A. 7. Yes.

"Q. 8. If you answer the above question 'yes,' state how the accident would have happened. A. 8. Account of open switch.

"Q. 9. Was the plaintiff guilty of negligence contributing to the accident? A. 9. No."

The defendant contends that these findings are inconsistent with, and contradictory to, each other, and that some of them are not only not supported by the evidence, but are absolutely contradictory thereto. This contention is based on the effect to be given rule 93. The response of the plaintiff is that he was controlled by rule 99, and not by rule 93. Under the findings, if rule 93 governed, the plaintiff was negligent; if rule 99 gov-

erned, the switch crew was negligent. This makes it necessary to construe rules 93 and 99 with reference to each other, and to ascertain which rule governed the plaintiff at the time of the accident. Rule 93 is specific and clear, and purports to govern the operation of trains within yard limits. If rule 99 governs within yard limits, there is no room for the operation of rule 93. Rule 99 would then cover the entire field of railroad operations, including those in railroad yards. The operation of rule 99 in railroad yards, where there is a large amount of traffic, would be practically impossible, for the reason that switch engines could not send flagmen to the front and to the rear as often as it becomes necessary to move the switch engine forward and back, on, or across, main-line tracks. If rule 93 governs within yard limits, and rule 99 governs in all places outside of yard limits, both rules are effective. The only reasonable conclusion that can be reached is that rule 93 governs the operation of extra freight trains within yard limits.

The plaintiff invokes the aid of sections 8492-8495 of the General Statutes of 1915. The response is that the state statute does not enlarge the defendant's liability over that created by the federal act. (*Roebuck v. Railway Co.*, 99 Kan. 544, 162 Pac. 1153; *Seaboard Air Line v. Horton*, 233 U. S. 492; Richey, Federal Employers' Liability, 2d ed., § 52.)

The present action is similar to *Pyles v. Railway Co.*, 97 Kan. 455, 155 Pac. 788. In that case this court said:

"The jury returned an affirmative answer to the question: 'If the deceased, Walter Pyles, had had his engine and train under control, as required by the rules, when he entered the yard limits at South Winfield on April 1, 1912, would the accident have happened?' This finding, among others, is attacked by the defendant as without support in the evidence. 'Under control' was defined by the rules as meaning—'ability to stop a train within the distance track is seen to be clear.' Inasmuch as the switchman's flag, or signal made by swinging his lantern across the track, given while the incoming train was on the bridge, something over 1,500 feet away, was seen by the engine crew (as shown by the answering whistle) it seems clear that if the train had been even then under control the collision would have been prevented." (p. 457.)

In the present case, the jury found that the plaintiff had his train under control 2,500 feet away from the place of the accident. He then knew there was an obstruction on the track at the salt plant. He could have prevented the accident. Under

rule 93, it was his duty to prevent the accident. He did not do so, and, therefore, he cannot recover.

The judgment is reversed, and the trial court is directed to enter judgment in favor of the defendant.