No. 28,957.

Iva M. Caples, as Administratrix of the Estate of Osgood Caples, Deceased, *Appellee*, v. The Atchison, Topeka & Santa Fe Railway Company, *Appellant*.

(283 Pac. 53.)

342

Opinion filed December 7, 1929.

*William R. Smith, Owen J. Wood, Alfred A. Scott, Alfred G. Armstrong,* all of Topeka, and *J. E. Torrance,* of Winfield, for the appellant.

*Charles Stephens, Frank E. Dresia,* both of Columbus, *Stewart S. Bloss* and *Schuyler C. Bloss,* both of Winfield, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by Mrs. Iva M. Caples, administratrix of the estate of Osgood Caples, deceased, against the Atchison, Topeka & Santa Fe Railway Company, to recover damages for injury sustained by her husband which resulted in his death, and which plaintiff alleged was caused by the negligence of the company. The action was brought under the federal employers' liability act, in which she recovered judgment for $14,000, from which defendant appeals.

Caples, it appears, was and had been for about a year employed in the railroad yards of the defendant at Wellington as a car checker. His duties were to make a record of the initials, numbers and seals of cars arriving at the yards; to observe whether any of them had been broken open and to make a report of the origin and destination of each car to the yardmaster, and also to the superintendent at Wellington. On the night of December 1, 1927, about three o'clock a. m., a freight train coming in from the east was moving down through the yards and Caples, who had been in the office south of the yards, started northward across several tracks, supposedly to check the cars on the incoming freight train. He passed across tracks 19, 185 and 186, and was killed on track 187. A sketch of the place of the accident and the surroundings will be found on the following page.

SKETCH
to accompany accident report
Fatal Injury O.A.Caples - in Train Yards at
Wellington, Kansas
Panhandle Division, First District.
DEOW-5-B-626-956205- Dec 6,27
1"=100'

A switching crew was operating in the yards at the time on track 187 and was switching a string of fifteen cars, moving them to different parts of the yards. On the east end of this string were two flat cars, next west from the two flat cars was a low dump car, and the balance of the string were box cars. As Caples passed over the tracks the switch foreman, Almack, who was at the east end of the string, signaled the engineer for these cars to move back, and just as this was done Caples stepped on that track and was struck and killed. On the adjoining track were a number of large refrigerator cars which, it is claimed, cast a shadow on the flat and dump cars so that Caples did not see the latter. There was no light on the east end of this string of cars and no lookout man on the end of the cars backing over that track. It is alleged that the foreman who was controlling the switching was negligent in not having a man or a light on the east end of the string and in not keeping a proper lookout in the direction in which the cars were moving and in failing to stop the train before running over Caples when in the exercise of ordinary care he could have seen him and prevented the injury. With the verdict in favor of the plaintiff the jury returned the following special findings of fact:

"1. How long had Osgood A. Caples, the deceased, been employed in the yards at Wellington, Kan., when he was struck and killed by a string of cars being switched in the yards? A. About one year.

"2. State fully and specifically what Caples was doing in the line of his duty when struck and killed in the yards at Wellington. A. He was crossing yards on his way to check train No. 33.

"3. If you find for the plaintiff, state fully what acts or act, omissions or omission of duty on the part of the defendant or any of its employees constituted the negligence which caused or contributed to the death of Osgood A. Caples. A. Defendant was negligent in not having signal light on east end of flat car, or providing proper warning, and engine foreman was also negligent to a degree in not giving previous warning.

"4. Was Caples, the deceased, guilty of any negligence which contributed to his injury and death? A. To some degree.

"5. If you answer the next preceding question in the affirmative, state particularly in which his negligence consisted. A. He failed to stop and examine track before crossing.

"6. If you find that the deceased, Osgood A. Caples, was guilty of negligence contributing to his injury and death, state how much you diminish plaintiff's damages by reason of such contributory negligence. A. Thirty-six thousand dollars deducted from $50,000 asked for.

"7. If you find for the plaintiff in this action, state specifically what agent, employee or agents or employees negligently caused the injury and death of Osgood A. Caples. A. The engine foreman to a degree.

"8. If you find for the plaintiff, state fully and specifically what the agent or employee or agents or employees and each of them mentioned in the next preceding question did or omitted to do that caused the death of Osgood A. Caples. A. The engine foreman failed to give any warning till Caples had started across track."

The defendant assigns as error the overruling of the demurrer to plaintiff's evidence, the refusal of its request to instruct the jury to return a verdict for defendant, the denial of the motion to strike out the findings of the jury that defendant was guilty of negligence, and the overruling of its motion for a new trial. While the jury found that defendant was negligent in not having lights on the east end of the string of cars that were being switched, it appears that there was no evidence that it was the rule or custom of this defendant or of any other company to have lights or lookout men on the ends of switching cars in the yards, and it may also be said that this ground of negligence was not submitted to the jury. There is the further finding that the foreman in charge of the switching string was negligent to some degree in not giving previous warning to Caples, as well as one that Caples was negligent to a degree in failing to stop and examine the track before crossing it.

The first question for consideration is, Did the defendant fail under the circumstances to observe due care for the protection of Caples? The evidence is practically without dispute as to the situation at the place of the accident, and of the action of the employees in charge of the switching when it occurred. The principal witness for the plaintiff was Almack, the foreman who testified that he was directing the switching operation, and that he signaled the pin-puller with his lantern to cut off three cars which were to be shunted upon another track, and then while looking towards the engineer he gave the kick signal with his lantern, which he held above his shoulder, swinging it back and forth. The engineer obeyed the signal and pushed the cars back at a rate of five or six miles an hour. Almack had seen Caples and another employee, Popplewell, start from the office south of the tracks towards the one on which the switching was being done, and that as he was busy signaling and throwing the switch, he did not see Caples again until he was within about fifteen feet of him, and was stepping on the track. He saw Popplewell passing as he threw the switch, who appears to have been about twenty-five or thirty feet in advance of Caples. When Almack saw Caples stepping on the track he yelled at him to look out for the cars. About the same time Popplewell, who had crossed in

safety, also holloed a warning to Caples, but the warnings were too late. Caples was struck and knocked to a place near Almack's feet and was run over and killed. Among other things, Almack testified that he was busy switching and signaling and that there was no time for him to do anything to save Caples, and that if he could have saved him he certainly would have done so. The witness further stated that there were three switching crews operating in the yard and that employees were making and breaking up trains therein practically all of the time on the track where the accident occurred, and further that it was a busy yard and that it took a good deal of care by employees to avoid being hit..

Another witness who saw the casualty said that Caples walked as if he had a lantern under his arm, and also that the lead track on which the switching was being done was used practically all the time, day and night, and that all of the employees working in the yard should have known of that fact, and that the men in the yards where switching is done understand or should understand what they are doing and how they are doing it. He further stated that Almack had his lantern lighted and that the rays of the lantern extended a distance of about ten feet. He added that he didn't see how employees working in the yard could avoid knowing that it was a busy yard and that the lead track where the accident occurred was being used all the time, day and night.

It is to be noted that the accident occurred in the yards of the company, a busy place where switching was going on almost continuously over a web of tracks. It was necessarily a place of danger, a fact which experienced employees understood and where each of them in crossing tracks was required to look out for his own safety. Familiar as Caples was with the situation, and the custom or practice in carrying on switching in the yard, he knew that cars would be shunted back and forth without lights and lookouts on the ends of the moving cars and without warning to employees working in the yard. The foreman who was directing the switching movement had a right to expect that other employees would look out for their own safety in crossing tracks upon which cars were being moved. It was not incumbent on him to be on the lookout for unobserving or careless employees who might undertake to cross a track in front of moving cars. He had his own duties to perform in signaling and throwing switches and had a right to assume that the plaintiff, familiar with the yard and the practice therein, would not neg-

ligently cross tracks in front of advancing cars without taking care to stop and examine the situation and the danger before crossing. The jury found that Caples was negligent in that respect. The danger was not an unusual one, but was rather an incident of the employment of Caples and other yard employees. Of course, if it had been an unusual hazard arising out of a departure from a prevailing practice a different rule might apply, or if it appeared that the foreman had seen in time that Caples was exposed to a danger of which he was oblivious, the foreman should, according to the humane doctrine, have done what he reasonably could to save him. The evidence is, however, that the foreman did all he could for Caples' protection after seeing that he intended to cross the track in front of moving cars. While the foreman had seen Caples start north from the office over a number of tracks it was not his duty to keep his eye upon Caples all the way until he reached the lead track, lest he might attempt to cross the track on which switching was being done. Until it was seen that Caples was about to step on the lead track, the foreman had a right to assume that Caples would not overlook the perils of the switching yards and rashly walk in front of advancing cars. The switching, it appears, was being done in the customary way, and as the foreman was naturally giving attention to his own affairs in signaling and switching, it cannot be regarded as his duty to leave them in order to exercise care to an employee whose duty it was to care for himself. The fact that there were high cars on the adjoining track which made it more difficult to see the lower ones on the lead track cannot be regarded as negligence of the defendant. All kinds of cars came into the yards for switching, a fact which Caples knew and one to which it was his duty to give attention. Under the evidence we think there was no valid ground for holding that the defendant was negligent towards Caples in this unfortunate casualty. It appears that the accident which resulted so disastrously was a risk assumed by his employment and also that it was the result of his own want of care.

The action was brought under the federal employers' liability act and the decisions of the United States supreme court are controlling. *Toledo, St. L. & W. R. R. v. Allen*, 276 U. S. 165, was an action brought under the same act as the instant one, where a car checker working in a railroad yard was struck and injured by a shunted car in a switching process. He claimed the accident was caused by the closeness of the tracks and by the negligent failure of

other employees to warn him of the approach of the car. A switching crew was working in the yard and in the operation two cars were detached from a string of cars that were being pushed backwards. The cars were unlighted and unattended and no person had warned the injured man of their approach. The court, after stating that the case was governed by the principles of common law as administered by the federal courts, said that the plaintiff could not recover in the absence of negligence on the part of the defendant, and that—

"The work of checking cars in a yard at night where switching is being done is necessarily attended by much danger. But fault or negligence may not be inferred from the mere existence of danger or from the fact that plaintiff was struck and injured by the moving car. Defendant did not owe to plaintiff as high a degree of care as that due from carriers to their passengers or others coming on their premises for the transaction of business. The reason for the distinction is that plaintiff's knowledge of the situation and the dangers existing because of the narrow space between the tracks was at least equal to that chargeable against the defendant. (*Missouri Pacific Rld. Co. v. Aeby*, 275 U. S. 426.) . . . There is no support for the assumption that plaintiff was without knowledge of the switching practice followed in that yard or that the movement in question created an unusual hazard. On the evidence it must be held that he knew how switching was done there; and, in the absence of proof that he was exposed to some unusual danger by reason of a departure from the practice generally followed, it cannot be held that defendant was in duty bound to give him warning. The members of the switching crew had a right to believe that he would keep out of the way of the shunted car. (*Aerkfetz v. Humphreys*, 145 U. S. 418.)" (pp. 169, 171.)

The Aerkfetz case above cited was based upon injury to an employee in a switching operation within a railroad yard where there were many tracks used in making up trains. A switch engine was constantly moving forwards and backwards in the yard. The plaintiff was at work in the yards as a repairer of tracks and had been employed there about eighteen months, and therefore was familiar with the manner in which the work was done. At the time of the injury the switch engine was pushing two cars at a rate of speed which was customary and which was necessary in the making up of trains. The plaintiff did not keep a lookout for approaching cars and was struck by the engine. Mr. Justice Brewer, who rendered the opinion, among other things said:

"There could have been no thought or expectation on the part of the engineer, or of any other employee, that he, thus at work in a place of danger, would pay no attention to his own safety. Under such circumstances, what negligence can be attributed to the parties in control of the train or the management of the yard? They could not have moved the cars at any slower

rate of speed. They were not bound to assume that any employee, familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars. There were no strangers whose presence was to be guarded against. The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion. The person in direct charge had a right to act on the belief that the various employees in the yard, familiar with the continuously recurring movement of the cars, would take reasonable precaution against their approach. . . . It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employees who had all the time knowledge of what was to be expected." (*Aerkfetz v. Humphreys*, 145 U. S. 418, 420.)

It was held that under the circumstances there was no negligence on the part of the defendants.

In another yard case, where an employee stepped upon a switch track where switching was being done and was struck by a car being kicked from the main line into the yard, and which had no lookout or light on it, the engine foreman who was directing the switching movement stood within thirty feet of the place of the injury and the cars kicked back were moved at the rate of about fifteen miles per hour. The court held that the plaintiff assumed the risk, and in the decision said:

"Plaintiff's intestate was an experienced railroad employee, and the conclusion is inescapable that he was thoroughly familiar with the custom of the yard to switch cars without requiring them to be provided with a lookout, or to have lights upon them, so as to furnish warnings of danger. He was bound to know from his experience that the precautions against injury now insisted upon did not prevail in defendant's yard, and that it might be expected at any time, day or night, that a car would be moved without warning of any kind." (*Gilmer v. Yazoo & M. V. R. Co.*, 4 F. [2d] 963, 964.)

It was accordingly held that there could be no recovery from the injury under the federal employers' liability act. See, also, *Norfolk & W. Ry. Co. v. Collingsworth*, 32 F. [2d] 561; 1 White's Personal Injuries on Railroads, p. 434, § 328; 2 Bailey on Personal Injuries, § 2727, p. 918; 3 Elliott on Railroads (2d ed.) § 1283, p. 692.

We conclude that there is no support for the contention that the injury was due to the negligence of the defendant. It does appear that the Caples injury was the result of his own negligence in passing over the tracks where switching was a constant operation without the precaution to stop and examine the lead track before stepping upon it when he knew as well as other employees that cars were continually being moved upon it. It is true that the high refrigerator cars shadowed the flat cars and made it more difficult for him

to see the flat cars, but he knew there was a track there over which cars might at any time be moving. He could doubtless have seen the signaling of the foreman with his lantern if he had taken the precaution to look for it. The foreman saw Caples as he stepped on the track and Caples could as easily have seen the swinging lantern in the foreman's hand when he was signaling for the movement of the cars, and he necessarily knew the purpose of the signals and that it meant the movement of cars. .

While the conclusion is inescapable that the casualty was due to his own want of care, we place our decision upon the ground that it was not shown that the injury was the result of defendant's negligence. It follows that the judgment must be reversed with the direction to enter judgment in favor of the defendant. It is so ordered.