No. 33,659

FRANK A. SCHAEFER, *Appellee*, v. FRANK O. LOWDEN, JAMES E. GORMAN and JOSEPH B. FLEMING, Trustees of the Chicago, Rock Island & Pacific Railway Company, *Appellants*.

(78 P. 2d 48)

Opinion filed April 9, 1938.

*Luther Burns, J. E. DuMars*, both of Topeka, *Earle W. Evans, Joseph G. Carey, W. F. Lilleston* and *George Stallwitz*, all of Wichita, for the appellants.

*Harry C. Castor, Thomas E. Elcock, Victor J. Rogers* and *J. Paul Jorgensen*, all of Wichita, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This is an action under the federal employers' liability act (45 U. S. C. A., §§ 51-59) to recover damages for personal injuries sustained by the plaintiff while in the service of defendants. Plaintiff recovered judgment and defendants appeal.

Plaintiff alleged that on April 20, 1936, he was in the employ of defendants as car inspector, and at about 9:30 o'clock, p. m., on that date was assisting in the making up and breaking up of cars at the Cline yard, working on a night shift; that a crew with a foreman at the Cline yard was engaged in cutting out freight cars, and that it was the duty of the plaintiff, together with the crew, to inspect such cars and to cut out such cars from trains and transport the cars along the tracks at Cline yard. At the above-stated time plaintiff was employed on track No. 1; that it was dark and rainy; that after putting his packing iron in the material box, about sixteen feet from track No. 1, he started to go across track No. 1 to track No. 4; that at the time a car on track No. 1 was moving in a southerly direction toward plaintiff under its own momentum, which car had "carelessly and negligently been cut loose without any warning." It was alleged that as plaintiff proceeded across track No. 1 he was struck by the approaching car and sustained serious injuries. The negligence charged in the petition is as follows:

"10. Plaintiff further alleges that said defendants were guilty of negligence which was a direct and proximate cause of plaintiff's injuries and that but for such negligence the plaintiff would not have been injured in this:

"(a) That said defendants were guilty of negligence in not providing this plaintiff a safe place to work and by reason of cutting off said car in the direct path of the cars upon which the defendants, their servants, agents and employees knew plaintiff had been working.

"(b) That said defendants were guilty of further negligence in not having said moving car lighted so as to show its position on said track and in not informing this plaintiff that said car was cut off in his direction, the defendants, their agents, servants and employees well knowing it to be dark and rainy and well knowing said car to fuse with the darkness of nighttime and well knowing that said car could not be seen by this plaintiff."

Defendants answered, denying all the material allegations of plaintiff's petition; alleged that the plaintiff "voluntarily assumed the risk and danger of all injuries and damages by him alleged and suffered"; alleged that if the plaintiff was injured, such injuries were not caused by any fault, negligence or wrongful act of defendants, but were caused by the inattention, lack of care and negligence of the plaintiff.

Defendants' demurrer to plaintiff's evidence was overruled. The jury answered special questions and returned a verdict for plaintiff in the sum of $16,000.

The various specifications of error are thus summarized in appellants' brief:

"1. The court erred in overruling defendants' demurrer to plaintiff's evidence presented at the conclusion of the plaintiff's evidence.

"2. The court erred in instructing the jury on the law of assumption of risk under the federal employers' liability act, and

"In erroneously instructing the jury generally on the law of contributory negligence, and on the custom and manner of handling cars in the Cline yard, wherein no liability would be created from the happening of the accident involved.

"3. The court erred in overruling defendants' motion to set aside special findings of the jury numbers 5 and 6, and in overruling defendants' motion for judgment on the special findings of the jury, and in overruling defendants' motion for a new trial."

At the outset it may be well to observe that in actions arising under the federal employers' liability act certain propositions are well settled and are binding on this court.

First: By the federal employers' liability act, congress took possession of the field of employers' liability to employees in interstate transportation by rail; and all state laws upon that subject were superseded. (*C. M. & St. P. R. Co. v. Coogan,* 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041; *Second Employers' Liability Cases* [*Mondou v. New York, N. H. & H. R. Co.*], 223 U. S. 1, 55, 32 S. Ct. 167, 56 L. Ed. 327, 348, 38 L. R. A., n. s., 44, 1 N. C. C. A. 875; *Seaboard Air Line v. Horton,* 233 U. S. 492, 501, 34 S. Ct. 635, 58 L. Ed. 1062, 1068, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834.)

In *Cole v. Railway Co.,* 92 Kan. 132, 139 Pac. 1177, this court said:

"When a state of facts is set up which come fairly within the federal act, and the proof sustains the averments, the liability must be determined by the provisions of that act. When congress acts upon the subject of interstate commerce and regulates the relations of employer and employee engaged in that kind of commerce, its action is, of course, supreme and exclusive, and any state statute in conflict with the congressional act must give way. (*Nashville &c. Railway v. Alabama,* 128 U. S. 96, 9 Sup. Ct. Rep. 28, 32 L. Ed. 352; *Mississippi R. R. Com. v. Illinois Cent. R. R.,* 203 U. S. 335, 27 Sup. Ct. Rep. 90, 51 L. Ed. 209; *The Employers' Liability Cases,* 207 U. S. 463, 28 Sup. Ct. Rep. 141, 52 L. Ed. 297.)" (p. 134.)

Second: Under the federal employers' liability act, negligence is the foundation of liability, and without negligence there can be no recovery. Under the act, the mere happening of the accident will not warrant a recovery; there must be negligence on the part of the railroad company or on the part of some employee, and this is the basis of liability. (*New Orleans & N. E. R. R. Co. v. Harris,* 247 U. S. 367, 38 S. Ct. 535, 62 L. Ed. 1167; *San Antonio Ry. v. Wagner,*

241 U. S. 476, 36 S. Ct. 626, 60 L. Ed. 1110; *Southern Ry. v. Gray*, 241 U. S. 333, 36 S. Ct. 558, 60 L. Ed. 1030.)

In *Roebuck v. Railway Co.*, 99 Kan. 544, 162 Pac. 1153, L. R. A. 1917 E, 741, it was said:

"Plaintiff's intestate, however, was an employee, and the action is brought against the employer to recover for death alleged to have been caused by the employer's negligence; and since it is brought under the federal employers' liability act, it can be maintained only upon the ground that the negligence consisted of the employer's failure to perform some duty or obligation owing to the employee under the law which applies to master and servant; not necessarily as this court would determine that question in a common-law action here, but as the federal courts would determine it." (p. 554.)

Third: Under the federal employers' liability act, the employee assumes the ordinary risks and dangers of his employment and the extraordinary risks and dangers which are obvious and which he fully knows and appreciates; he also assumes the risks due to the negligence of his employer and fellow employees which are obvious and which he fully knows and appreciates. (*Lively v. Railway Co.*, 115 Kan. 784, 225 Pac. 103; *Harper v. Chicago, R. I. & P. Rly. Co.*, 138 Kan. 782, 228 P. 2d 972; *Roebuck v. Railway Co.*, 99 Kan. 544, 162 Pac. 1153, L. R. A. 1917E, 741; *Boldt v. Pennsylvania R. R. Co.*, 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385; *Seaboard Air Line v. Horton*, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062.)

In *Delaware &c. R. R. v. Koske*, 279 U. S. 7, 10, 49 S. Ct. 202, 73 L. Ed. 578, the court said:

"The federal employers' liability act permits recovery upon the basis of negligence only. The carrier is not liable to its employees because of any defect or insufficiency in plant or equipment that is not attributable to negligence. The burden was on plaintiff to adduce reasonable evidence to show a breach of duty owed by defendant to him in respect of the place where he was injured and that in whole or in part his injuries resulted proximately therefrom. *And, except as provided in section 4 of the act, the employee assumes the ordinary risks of his employment; and, when obvious or fully known and appreciated, he assumes the extraordinary risks and those due to negligence of his employer and fellow employees.* (*Seaboard Air Line v. Horton*, 233 U. S. 492, 501; *St. Louis, etc., Ry. v. Mills*, 271 U. S. 344; *Northern Ry. Co. v. Page*, 274 U. S. 65, 75.)" (Italics inserted.)

With these general principles in mind, we proceed to the examination of the various assignments of error.

Defendants contend the court erred in instructing the jury on the law of assumption of risk under the federal employers' liability act. The court gave the following instruction:

"8. You are further instructed that one engaged in the work of car inspector, as was the plaintiff in this case, is beset with a certain amount of personal risk and hazard ordinarily incident thereto and that through no fault of anyone unforeseen accidents are likely to occur with resultant personal injury. Plaintiff herein assumed the ordinary and usual risks incident to and inherent to his employment as car inspector and to the work in which he was engaged. He did not, however, assume the risk of negligence on the part of his fellow employees, if you find that his fellow employees were negligent and that such negligence was the proximate and procuring cause of his injuries. There has been some testimony in this case with reference to the custom of handling cars in the Cline yard. Such evidence is to be considered by you on the questions of negligence and contributory negligence as alleged in this case. If the plaintiff knew that it was the custom to shift cars without giving any notice and he had been accustomed to work under those conditions this would be a matter to be considered by you in determining what amount of care should be exercised on his part to protect himself from injury and also as to whether or not there was negligence on the part of the employees in so shifting the cars. The mere fact that it was customary and known to be customary by both the plaintiff and the employees of the company to so shift cars is not a conclusive or controlling factor on the question of negligence, but it is to be considered along with all the other evidence in determining whether or not there was negligence or contributory negligence."

The court refused the following instruction as requested by defendants:

"4. You are instructed that the plaintiff by virtue of his employment assumed all usual and ordinary risks incident to his employment as car inspector and to the work in which he was engaged. You are further instructed that the plaintiff also assumed such extraordinary risks and those due to negligence of his employer and fellow employees, as were open and obvious or fully known and appreciated, or by the exercise of due and proper care could and should have been known to and appreciated by him; and if you find from the evidence in this case that the accident resulted from such ordinary or extraordinary risks as above defined, plaintiff cannot recover herein and it will be your duty to return a verdict for the defendants."

By instruction No. 8, above quoted, the court instructed the jury that while the plaintiff assumed the ordinary and usual risks incident to and inherent to his employment as car inspector, yet he did not assume the risk of negligence on the part of his fellow employees, if it was found that his fellow employees were negligent and that such negligence was the proximate and procuring cause of the injuries. The jury was not instructed as to extraordinary risks.

In *Harper v. Chicago, R. I. & P. Rly. Co.*, 138 Kan. 782, 28 P. 2d 972, it was said:

"Under the federal act an employee ordinarily assumes the usual and obvious risks incidental to his employment, and the assumption of the usual risks of

his employment is ordinarily not a jury question. It is a matter of law. (*Lively v. Railway Co.*, 115 Kan. 784, 788, 225 Pac. 103.) . . . This case having been brought under the federal employers' liability act, the federal rule as to the assumption of risk must be applied. In such a case the defense of assumed risk is permissible, and under that rule the plaintiff assumes the risks ordinarily incident to his employment, and where the risks are open and obvious and can be seen at a glance or are fully known he assumes the extraordinary risks as well. (*Delaware, &c., R. R. Co. v. Koske,* 279 U. S. 7, and cases cited.) Where the facts are disclosed by the evidence of plaintiff, it is ordinarily not a jury question, but is one of law for the determination of the court." (pp. 784, 785.)

In *Quilantan v. Railroad Co.*, 109 Kan. 111, 197 Pac. 1095, the plaintiff was employed as a track man at Topeka, cleaning and repairing tracks in the yard, when one of defendant's freight trains ran against him, knocking him down and seriously injuring him. In that case it was said:

"The federal rule as to assumption of risk is the one we must follow in this case. (*Roebuck v. Railway Co.,* 99 Kan. 544, 162 Pac. 1153; *Rask v. Railway Co.,* 103 Kan. 440, 173 Pac. 1066.) The federal rule is to follow the common law. (*Southern Ry. v. Gray,* 241 U. S. 333.) In *Aerkfetz v. Humphreys,* 145 U. S. 418, the employee was familiar with the movements of the cars and of the switch engines and knew that the switch engine was busy making up trains and that cars were liable to be moved along the track where he was working at any time. He placed himself with his face away from the direction from which the cars were to be expected. Abundance of time elapsed between the moment the cars entered upon the track and the moment they struck him. The court said:

" 'There could have been no thought or expectation on the part of the engineer, or of any other employee, that he, thus at work in a place of danger, would pay no attention to his own safety. . . . They were not bound to assume that any employee, familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars.' (p. 420.)" (p. 115.)

For about twenty-three years plaintiff had been employed as a car inspector, a considerable part of that period in the Cline yard at night. He was thoroughly familiar with the yard and its surroundings. He knew the location of every track comprising the yard; he had worked with this same switching or engine crew night after night; he was provided with and used the usual type of car inspector's lantern; he had polished and trimmed it at four o'clock when his tour of duties began; he knew of the custom and practice followed in switching and handling cars in the yard; he knew that outbound cars were to be assembled on tracks Nos. 1 and 4 and later to be placed in their respective trains for movement to points without and beyond the state; he knew that the switching crew with the

engine were at the north of the yard on the lead track and had dropped or kicked four cars on track No. 4 and three cars on track No. 1 and that others were likely to follow until the work of placing cars upon those two tracks was completed; he knew the night was dark; he knew that the cars were switched, kicked or dropped by the switching crew so that they would move toward or against the other standing cars previously dropped upon tracks Nos. 1 and 4; he knew that ordinarily no switchman rode the cars down the tracks and that the cars were not lighted; he knew also that it was not the custom or practice, nor had it ever been the custom or practice to give warning of any kind of the movement or the switching, kicking, or dropping of cars along the various tracks in that yard; he also knew, and so testified, that the work on that occasion was being done in the usual and customary manner—that same manner with which he was familiar by reason of his years of service in the yard; he also knew that a car or cars might be encountered upon tracks Nos. 1 and 4 at any time without any warning whatsoever.

The plaintiff had worked in the same yards at night for many years, and through all kinds of weather. In the performance of his duties the risks arising from darkness, wind, dust and rain were known and appreciated by him. These risks were assumed by the plaintiff. He also assumed the risks arising from the negligence of his employer and fellow employees which were obvious and which were fully known and appreciated, as announced in *Delaware &c. R. R. v. Koske,* supra, and other cases cited. Under instruction No. 8 given by the court these defenses were denied the defendants, and may well have been of controlling importance to the jury. We conclude the instruction requested by defendants correctly stated the law as announced in the foregoing cases, was applicable to the facts in evidence, and should have been given by the trial court.

Defendants assert the court erred in overruling defendants' motion to set aside special findings of the jury, Nos. 5 and 6, and in overruling defendants' motion for judgment on the special findings of the jury.

The jury returned the following answers to special questions:

"1. Do you find from the evidence that Mr. Schaefer knew that cars for outgoing trains were to be assembled by the switch crew on tracks 1 and 4? A. Yes.

"2. Do you find from the evidence it was the custom of switch crews in the Cline yard to warn car inspectors of the dropping or switching of cars as they were being dropped or kicked along various tracks? A. No.

"3. Do you find from the evidence it was the custom or practice in the Cline yard for a switchman to ride each car along the track as it was being pushed, dropped or kicked?   A. No.

"4. Do you find from the evidence it was the custom or practice in the Cline yard for a switchman or other person to ride at night with a lighted lantern each car pushed, kicked, or dropped along the tracks?   A. No.

"5. Do you find from the evidence the defendants were negligent, at the time plaintiff was injured?   A. Yes.

"6. If in answer to question number 5 you find the defendants were negligent, state fully of what the negligence consisted.   A. The car kicked in on No. 1 was not properly watched.   Extra precaution should have been taken due to weather conditions.

"7. At what distance could the car have been seen by Mr. Schaefer if he had turned his lantern to the north just before he stepped between the rails of track No. 1?   A. Twenty feet.

"8. Did Mr. Schaefer turn the lantern to the north and toward the approaching car as he stood at track No. 1 before entering upon it?   A. Mr. Schaefer turned his lantern to the north as he approached track No. 1.

"9. If you find from the evidence that Mr. Schaefer turned the lantern toward the north along track No. 1, state where he stood and the distance from the track when he did so.   A. Approximately six to ten feet."

In answer to question No. 5 the jury found the defendants were negligent, and in answer to question No. 6 the jury answered that the negligence consisted of the following:

"The car kicked in on No. 1 was not properly watched.   Extra precaution should have been taken due to weather conditions."

In answer to question No. 1 the jury found that the plaintiff knew the outgoing trains were to be assembled on tracks Nos. 1 and 4.   In answer to question No. 2 the jury found that it was not the custom of the switch crew in the Cline yard to warn inspectors of the dropping or switching of cars as they were being dropped or kicked along various tracks.

The negligence charged in the petition was:   (1) That a car had been carelessly and negligently cut loose without warning.   The jury in answer to question No. 6 did not find that the car that injured plaintiff was carelessly or negligently cut loose without warning.   On the contrary, the jury found it was not the custom to warn the inspectors when dropping or switching cars.   (2) Negligence is charged in not providing the plaintiff a safe place to work.   No specific defect was alleged as to the condition of the track, roadbed, surroundings or conditions in the yard.   The answer to question No. 6 is silent on this point, and we find nothing in the record to support the charge.   (3) Negligence is charged in the petition "by

reason of cutting off said car in the direct path of the cars upon which the defendants, their servants, agents and employees knew plaintiff had been working." No negligence in this regard was found by the jury. On the contrary, the answer to question No. 2 would seem to negative this allegation. (4) Negligence is charged in "not having said moving car lighted . . . and in not informing this plaintiff that said car was cut off in his direction, the defendants, their agents, servants and employees well knowing it to be dark and rainy." Was it the duty of defendants to have lights on the cars as they were kicked or dropped along the track? The jury did not so find, and we find no support of this charge in the evidence. (5) Negligence is charged in not informing plaintiff that the car was cut off in his direction, the defendants knowing it to be dark and rainy, and knowing the car to fuse with the darkness and could not be seen by the plaintiff. In answer to question No. 2, the jury found it was not the custom to give warning as the cars were dropped or kicked along the track.

It is thus difficult to perceive that the acts of negligence found in answer to question No. 6 are responsive to any allegation of negligence in plaintiff's petition. Counsel for plaintiff stress the speed of the car that caused plaintiff's injury, also the wind and the dust. Confessedly these were not in the issues as formulated in the pleadings. Counsel assert, however, evidence as to these conditions was admitted without objection and that the issues were enlarged by tacit consent of the litigants. (*Corson v. Oakley,* 138 Kan. 520, 530, 27 P. 2d 290; *Watson v. Watson,* 110 Kan. 326, 203 Pac. 714.)

As to the speed of the car the plaintiff testified:

"Q. Now, at what rate of speed, if you know, do those—are those cars ordinarily kicked into the track? A. Well, they are not kicked in very fast, but the further they go, the faster they run, and this car was running fast.

"Q. How do you know; you didn't see it; what makes you think it ran fast? A. Why, when it hit me I felt it.

. . . . . . . . . . . .

"Q. So you cannot—you are not able to say at what rate of speed the car was traveling? A. It was traveling around ten or twelve mile an hour."

As plaintiff's case is bottomed on the proposition that he could not see the car, the probative value of this testimony of the plaintiff as to the excessive speed of the car is doubtful. Taylor, the yard foreman, who gave the signal to the engineer to kick the car on track No. 1, stated the car "just barely was moving and I stood there and watched the car, saw then it was going to go in the clear,

thought maybe we would have to throw it again, but didn't, and I went on down the lead and went into number 8 track." The testimony showed that at the time the car struck the plaintiff the engine was almost due east on track No. 8. The distance from the lead to the point on track No. 1 where the plaintiff was injured was 469 feet. After kicking the car on track No. 1, the engine traveled down the lead to track No. 8, then on to that track, traveling at a speed of three to five miles an hour. At that speed the engine had traveled a greater distance than the car. So the testimony of the foreman Taylor, and the undisputed fact as to the speed of the engine in going a greater distance, shows the car moving toward plaintiff on track No. 1 was traveling at a slower speed than the engine. The wind was blowing and there was dust in the air, but the record does not disclose there was a violent storm.

The conclusion is inevitable that the negligence found by the jury was outside the issues in the pleadings. Admitting that the issues were enlarged by consent to cover speed of the car and weather conditions, the evidence fails to disclose any negligence of defendants as to the speed of the car, or arising out of the weather conditions.

As shown above, the mere happening of an accident will not warrant a recovery. Under the federal employers' liability act negligence must be shown on the part of the railroad company or on the part of some employee, and this is the basis of liability.

In *C. & O. R. Co. v. Mihas*, 280 U. S. 102, 50 S. Ct. 42, 74 L. Ed. 207, the plaintiff was employed by the defendant company to care for switch lights and lamps along the right of way and had been so employed for four years. He lived near the tracks and was familiar with the switching operations and the time when the switching was carried on in the yards. At such time he attempted to climb over a coal car standing with other cars on the switch tracks. He testified that he looked to one side and the other, but did not see or hear any train or car approaching. While on the coal car a string of nine cars was forcibly propelled by means of a flying switch against the car on which plaintiff was standing with such violence that plaintiff was thrown between the cars and seriously injured. The court said:

"There is nothing in the record to show that employees engaged in the switching operation knew or had reason to believe that Mihas was in any position of danger. In the absence of such knowledge or ground for belief, they were not required to warn him of the impending switching operation or

take other steps to protect him. (*Toledo, St. L. & W. R. Co. v. Allen,* 276 U. S. 165, 173.)

"The evidence failing to show negligence on the part of the company, the motion for a directed verdict in favor of the petitioner should have been granted." (p. 108.)

The above statement is applicable here. The record fails to show the switching crew knew or had reason to believe that Schaefer was in a position of danger. Under the rule in the Mihas case, unless the crew had such knowledge or ground for belief, they were not required to warn him of the approach of the car.

In *Ryan v. Atchison, T. & S. F. Rly. Co.,* 131 Kan. 706, 293 Pac. 763, the court said:

"The deceased in this case was not only accustomed to the yards, having worked in them for ten years, but his business was to run and move switch engines just as this engine was being moved.

"Under the federal employers' liability act it has never been the duty of the employer to place an employee on the lookout to observe and warn other employees of approaching danger." (p. 712.)

The case of *Caples v. Atchison, T. & S. F. Rly. Co.,* 129 Kan. 341, 283 Pac. 53, is directly in point. As the facts in this case are so similar to the facts in the case at bar, we think the Caples case is of controlling importance here. In that case the court said:

"While the jury found that defendant was negligent in not having lights·on the east end of the string of cars that were being switched, it appears that there was no evidence that it was the rule or custom of this defendant or of any other company to have lights or lookout men on the ends of switching cars in the yards, and it may also be said that this ground of negligence was not submitted to the jury. There is the further finding that the foreman in charge of the switching string was negligent to some degree in not giving previous warning to Caples, as well as one that Caples was negligent to a degree in failing to stop and examine the track before crossing it. . . .

"It is to be noted that the accident occurred in the yards of the company, a busy place, where switching was going on almost continuously over a web of tracks. It was necessarily a place of danger, a fact which experienced employees understood and where each of them in crossing tracks was required to look out for his own safety. Familiar as Caples was with the situation, and the custom or practice in carrying on switching in the yard, he knew that cars would be shunted back and forth without lights and lookouts on the ends of the moving cars and without warning to employees working in the yard. The foreman who was directing the switching movement had a right to expect that other employees would look out for their own safety in crossing tracks upon which cars were being moved. It was not incumbent on him to be on the lookout for unobserving or careless employees who might undertake to cross a track in front of moving cars. He had his own duties to perform in signaling and throwing switches and had a right to assume that the plaintiff, familiar

with the yard and the practice therein, would not negligently cross tracks in front of advancing cars without taking care to stop and examine the situation and the danger before crossing. . . . The switching, it appears, was being done in the customary way, and as the foreman was naturally giving attention to his own affairs in signaling and switching, it cannot be regarded as his duty to leave them in order to exercise care to an employee whose duty it was to care for himself." (pp. 345-347.)

The special findings acquit the defendants of the negligence pleaded, and thus nullify the general verdict. (*Balandran v. Compton*, 141 Kan. 321, 41 P. 2d 720.) If we consider the issues enlarged during the trial to cover the excessive speed of the car, the evidence fails to show excessive speed, or negligence in the movement of the car.

As stated above, the plaintiff assumed the risk of the weather conditions. (*Indianapolis Traction, Etc., Co. v. Mathews*, 177 Ind. 88, 97 N. E. 320.) In the performance of his duties as car inspector in the yards, the plaintiff was bound to anticipate that when the wind was blowing, dust would be in the air. This was a risk which plaintiff must be held to have assumed. (*Martin v. C. R. I. & P. Rly. Co.*, 118 Ia. 148, 91 N. W. 1034.)

In *A. T. & S. F. Rld. Co. v. Plunkett, Adm'r*, 25 Kan. 188, a yard switchman was killed while attempting to couple two cars in the railroad company's yard, then loaded with projecting timbers. The jury, in answer to a special question whether there was any obstacle to prevent his seeing the car and the manner in which it was loaded, answered: "Yes, it was raining hard at the time." This court, in reversing a judgment in favor of plaintiff, said:

"It is admitted that the deceased knew the condition of the weather, the condition of the ground, the condition of the track, the condition of the cars (not including the manner in which they were loaded), and the manner in which the cars were to be coupled, as well as the defendant or any of its other servants or agents did; . . . The deceased knew that it was raining, and knew that he was to couple the cars without an engine being attached to either of them, . . . Indeed, the deceased was master of the situation. Almost every act (if not every one) that directly contributed to bring about the injury was the sole act of the deceased." (p. 199.)

In the case at bar, defendants could not have anticipated that Schaefer would fail to see the car switched in on track No. 1, or that he would be injured in crossing the track, as he had done for many years in the performance of his duties. In answer to the special questions the jury found that the plaintiff knew the outgoing trains were to be assembled on tracks Nos. 1 and 4, and that it was

not the custom for the switch crews to warn the car inspectors as the cars were dropped or kicked along the various tracks; that it was not the custom or practice for the switchmen to ride each car, and at night it was not the custom or practice to ride each car with a lighted lantern, as the cars were being pushed, kicked or dropped along the tracks. Such findings are contrary to the general verdict. It follows that the motions to set aside the findings Nos. 5 and 6 and the motion for judgment on the special findings should have been sustained. (G. S. 1935, 60-2918; *Smith v. T. & S. F. Rly. Co.,* 145 Kan. 615, 66 P. 2d 562; *Maris v. Street Railway Co.,* 98 Kan. 205, 158 Pac. 6; *Dye v. Rule,* 138 Kan. 808, 28 P. 2d 758.)

In this view of the case it becomes unnecessary to consider the other assignments of error. For the reasons stated, the judgment must be reversed with the direction to enter judgment in favor of defendants. It is so ordered.