No. 53,242

TERRY J. DORMAN, *Appellant,* v. KANSAS CITY TERMINAL RAILWAY COMPANY, *Appellee.*

(642 P.2d 976)

Opinion filed April 3, 1982.

*Cliff W. Ratner,* of Ratner, Mattox, Ratner, Barnes & Kinch, P.A., of Wichita, argued the cause, and *William L. Roberts,* of Kansas City, was with him on the brief for the appellant.

*Thomas S. Stewart,* of Lathrop, Koontz, Righter, Clagett & Norquist, of Kansas City, Missouri, argued the cause, and *Harlan D. Burkhead,* of the same firm, and *Robert A. DeCoursey,* of Kansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The plaintiff, Terry J. Dorman, brought an action for personal injuries under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* against the Kansas City Terminal Railway Company. The defendant railway pleaded a written release signed by plaintiff, a copy of which was filed with a motion for summary judgment. Plaintiff objected, saying the validity of the release was a question of fact to be tried to a jury. The trial court sustained the motion for summary judgment. Plaintiff appeals.

The following facts are taken from the petition, the affidavits in

the record, and the deposition of Mr. Ludgate, the defendant's claim agent:

On October 3, 1978, plaintiff was working as a station maintainer at the railway's terminal in Kansas City, Missouri. Plaintiff and his fellow workers were engaged in dismantling a mail conveyor system. This conveyor system was suspended over twelve feet above the floor. Unknown to the plaintiff someone had previously worked on dismantling the conveyor system and had cut certain bolts in the structure which helped to hold up the system. In the course of his work plaintiff cut a rod which was the sole remaining support for the conveyor system. The entire structure crashed to the floor. Plaintiff fell approximately ten feet and he sustained various personal injuries which included permanent injuries to his lower back.

Plaintiff was first taken into the station maintenance shop by a fellow worker. Claim Agent Ludgate arrived shortly, checked plaintiff's physical condition, and then Ludgate and plaintiff's supervisor arranged for plaintiff to be transported to the office of Dr. Duncan, the company doctor. Dr. Duncan x-rayed plaintiff's neck and back and stitched up plaintiff's forehead. After completing his examination and treatment the doctor advised plaintiff there was "nothing broken." Plaintiff was not hospitalized. From time to time, as requested by Dr. Duncan, plaintiff returned for further examinations.

During these subsequent examinations which extended over a month plaintiff continued to complain of pain in his neck, back and left leg. Dr. Duncan advised that plaintiff had a hematoma in his leg which would probably go away. Plaintiff was never told what was the matter with his neck, head and back. He was merely told he was going to be sore for a while from the fall. Dr. Duncan's only treatment consisted of prescribing pills for pain and putting plaintiff's leg under a heat lamp. Plaintiff felt he was getting no better and complained to Dr. Duncan, who then made arrangement for plaintiff to see a Dr. Forsythe. Dr. Forsythe examined plaintiff superficially. He took no history of the accident and took no x-rays. The examination was completed in 15 or 20 minutes and no report or findings were made available to plaintiff. When plaintiff was later examined by Dr. Duncan, Dr. Forsythe had not yet filed his report. Later Dr. Forsythe filed a report but plaintiff was never advised of the contents. Dr. Duncan

reported that plaintiff had received a "normal neurological consultation."

Dr. Duncan then reported this to Mr. Ludgate, the company claim agent, and plaintiff was released for light work. On his return to work plaintiff was assigned to his regular duties. He demanded another examination and Dr. Duncan then wrote "light duty" on the release-for-work form in large letters. He was then assigned light duty jobs. His last examination was around the 1st of February, 1979. At this time he mentioned a tired feeling in his back and a pain in his leg like a "charley horse." The doctor advised, "Mr. Dorman it looks like you are making a fine recovery." He was then given a work slip for full duty.

On February 2, 1979, the claim agent Ludgate prepared a release form and began negotiating with plaintiff for settlement and release. Plaintiff did not consult with an attorney and apparently knew little about his rights. Ludgate and the plaintiff discussed lost wages and the cost of an eye examination and glasses. Plaintiff assumed the company was paying Dr. Duncan and Dr. Forsythe. Nothing was said concerning pain, suffering, or permanent injuries. The release was presented to plaintiff for his signature, along with a check in the sum of $1,072.00. It was received by him in full settlement. The release is as follows:

"RELEASE

"In consideration of the payment of the sum of One thousand seventy two and 00/100 . . Dollars ($1,072.00) by Kansas City Terminal Railway Company, receipt whereof is hereby acknowledged, I do hereby release and discharge Kansas City Terminal Railway Company and all other parties whomsoever, from any and all claims and liability of every kind or nature, arising out of an accident on or about October 3, 1978, at or near the East subway in the subbasement of the Union Station Building, when a mail conveyor that I was cutting down fell to the floor causing me to fall about ten feet to the floor causing injuries ~~injury~~ to my left thigh and a laceration to my forehead.

"I have read this release and understand it.

"The above payment is made and accepted in compromise settlement and satisfaction of disputed claims and is not an admission of liability.

"No other promise of any kind, has been made to me in connection with this settlement.

"Signed at Kansas City, Missouri, this 2nd day of February, 1979.

s/  T J Dorman

"Witnesses:

s/  J E Ludgate"

In the 8th line of the release claim agent Ludgate crossed out the word injury and then instructed plaintiff to write on the face

of the release in longhand "I have read this release and understand it." Plaintiff did so and then signed it.

It should be noted the release described plaintiff's injuries as being "left thigh and a laceration to my forehead." No mention is made of any injury to plaintiff's back. It appears from the affidavit of plaintiff and the deposition of agent Ludgate that neither had knowledge at this time that plaintiff had suffered a permanent back injury consisting of a ruptured intervertebral disc.

On consulting with Dr. Otis E. James, Jr., M.D., plaintiff first learned that he had sustained a ruptured disc in the accident of October 3, 1978. Plaintiff was operated on April 21, 1980, and a ruptured disc was removed. According to Dr. James, plaintiff now has a permanent disability to the body as a whole. It was for this condition that the present suit was filed.

Now we turn to the first question. Does federal law govern the validity of a release taken under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq?*

The United States Supreme Court in *Dice v. Akron, C. & Y. R. Co.,* 342 U.S. 359, 361-62, 96 L.Ed. 398, 72 S.Ct. 312 (1952), states:

"We agree with the Court of Appeals of Summit County, Ohio, and the dissenting judge in the Ohio Supreme Court and hold that validity of releases under the Federal Employers' Liability Act raises a federal question to be determined by federal rather than state law. Congress in § 1 of the Act granted petitioner a right to recover against his employer for damages negligently inflicted. State laws are not controlling in determining what the incidents of this federal right shall be. *Chesapeake & Ohio R. Co. v. Kuhn,* 284 U.S. 44 [76 L.Ed. 157, 52 S.Ct. 45 (1931)]; *Ricketts v. Pennsylvania R. Co.,* 153 F.2d 757, 759 [164 A.L.R. 387 (1946)]. Manifestly the federal rights affording relief to injured railroad employees under a federally declared standard could be defeated if states were permitted to have the final say as to what defenses could and could not be properly interposed to suits under the Act. Moreover, only if federal law controls can the federal Act be given that uniform application throughout the country essential to effectuate its purposes. See *Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 244 [87 L.Ed. 239, 63 S.Ct. 246 (1942)], and cases there cited. Releases and other devices designed to liquidate or defeat injured employees' claims play an important part in the federal Act's administration. Compare *Duncan v. Thompson,* 315 U.S. 1 [86 L.Ed. 575, 62 S.Ct. 422 (1942)]. Their validity is but one of the many interrelated questions that must constantly be determined in these cases according to a uniform federal law."

The *Dice* case was concerned with a release obtained by misrepresentations as to its contents; however, the law is the same

regardless of the basis for attacking the validity of the release. *Taylor v. Chesapeake and Ohio Railway Company,* 518 F.2d 536, 537 (4th Cir. 1975); *Correia v. Seaboard Coast Line R. R. Co.,* 393 So. 2d 1161, 1162 (Fla. Dist. Ct. App. 1981).

The following cases, although not on the precise issue raised here, recognize the controlling authority of federal law in FELA cases. *Underwood v. Missouri-Kansas-Texas Rld. Co.,* 191 Kan. 338, 343, 381 P.2d 510 (1963); *White v. Thompson,* 181 Kan. 485, 493, 312 P.2d 612 (1957); *Schaefer v. Lowden,* 147 Kan. 520, 522, 78 P.2d 48 (1938).

We hold the validity of a release given by an employee for injuries covered by the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* raises a federal question to be determined by federal rather than state law.

Our second question is whether federal law recognizes mutual mistake as a ground for invalidating a FELA release.

Federal law recognizes mutual mistake as a ground for invalidating a release, but the mutual mistake must be as to a material past or present fact and not a mere mistake in prophecy, opinion or a belief relative to an uncertain event such as probable developments from and permanency of a known injury. *Locke v. Atchison, Topeka and Santa Fe Railway Company,* 309 F.2d 811 (10th Cir. 1962); *Heston v. Chicago and North Western Railway Co.,* 341 F. Supp. 126 (N.D. Ill. 1972); *Robertson v. Douglas Steamship Company,* 510 F.2d 829 (5th Cir. 1975); *Edwards v. Western & Atlantic R.,* 552 F.2d 137 (5th Cir. 1977).

Actually, it does not make any difference whether federal or state law applies because both recognize mutual mistake as to a material past or present fact as grounds for invalidating a release. *In re Estate of Thompson,* 226 Kan. 437, 441, 601 P.2d 1105 (1979); *Fieser v. Stinnett,* 212 Kan. 26, Syl. ¶ 3, 509 P.2d 1156 (1973).

We are now ready for the final question. Was there a sufficient showing before the trial court of the existence of evidence to establish mutual mistake to constitute a genuine issue of fact for submission to a jury?

The issue of mutual mistake in executing a release is a question of fact to be submitted to a jury. *Dice v. Akron, C. & Y. R. Co.,* 342 U.S. at 363; 66 Am. Jur. 2d, Release § 64, p. 749. In an action brought under FELA where plaintiff testified that he had read

and understood the release which he signed but that he had done so on the claim agent's assurance that there was nothing permanently wrong with his back, the issue of the validity of the release was held to be a question for the jury in *Callen v. Pennsylvania R. Co.,* 332 U.S. 625, 92 L.Ed. 242, 68 S.Ct. 296 (1948).

Where neither party to a release understood at the time that plaintiff had sustained a ruptured disc and both proceeded on the basis that the injury sustained by plaintiff was merely a temporary though painful strain, this was sufficient evidence of mutual mistake to make validity of the release a genuine issue of fact precluding summary judgment. *Taylor v. Chesapeake and Ohio Railway Company,* 518 F.2d 536. Where a material issue of fact existed as to whether a release entered into by employee and employer's claim agent, based upon a characterization of employee's injury as temporary in nature and either strain or sprain of back, there was mutual mistake or misrepresentation, and this precluded summary judgment. *Correia v. Seaboard Coast Line R. R. Co.,* 393 So. 2d 1161. Where plaintiff swears in his affidavit that he had no knowledge of the fact that he had a back condition requiring surgery, this is adequate to create a genuine issue of mutual mistake of fact which is a jury question under the FELA. *Castro v. Chicago, Rock Island & Pac. R. R. Co.,* 83 Ill. 2d 358, 415 N.E.2d 365 (1980). We hold the issue of the existence of mutual mistake in the execution of a release, when the mistake claimed is based on a material past or present fact not known to the parties, is a question of fact to be submitted to a jury. See also Annot., Jury Trial—Validity of Release, 43 A.L.R.2d 786, § 4 [c], p. 796-97.

It appears in the present case that both parties labored under a mutual mistake of fact at the time the release was signed. Mr. Dorman had a bad back problem with a ruptured disc which had been caused by the accident. Neither party knew of this problem. The doctors who examined Mr. Dorman took x-rays of the back but they discovered no abnormality. Dorman complained some of his back but his complaints were chiefly associated with pain in his leg and neck. The written release does not mention injuries to the back, only the thigh and forehead. From the deposition testimony of Mr. Ludgate it is fair to say he was not aware that plaintiff had suffered a back disability from his fall.

The appellee cites cases to support its position that the validity

of the release in this case was properly taken from a jury and decided by the trial court. These cases have been examined. In *Fieser v. Stinnett,* 212 Kan. 26, the court stated that questions concerning mutual mistake were normally for the trier of facts. In *Fieser,* both parties consented that the issue be submitted to and decided by the trial court as the trier of fact. 212 Kan. at 28. In *Reynard v. Bradshaw,* 196 Kan. 97, 409 P.2d 1011 (1966), the validity of the release was a matter submitted to a jury and the jury verdict upheld the settlement. On appeal the court held the jury's finding against the plaintiff on the issue of mutual mistake of fact was amply supported by substantial evidence. There was no evidence introduced to show any mutual mistake of past or present material fact on the part of the defendant. Other cases cited by the defendant can be similarly distinguished.

"A summary judgment proceeding is not a trial by affidavits, and the parties must always be afforded a trial when there is a good faith dispute over the facts. (*United States v. Kansas Gas and Electric Company,* 287 F.2d 601 [10th Cir. 1961].) A motion for summary judgment cannot be made a substitute for a trial either before a court or jury, and a plaintiff who states a cause of action which entitles him to a trial by jury is entitled to have his case tried in that way and cannot be compelled to submit his evidence in the form of affidavits in resistance to a motion for summary judgment and have the issues determined by such motion. (*United States v. Broderick,* 59 F. Supp. 189 [D. C. Kan. 1945].)" *Brick v. City of Wichita,* 195 Kan. 206, 211, 403 P.2d 964 (1965).

"Where the case records reflect a genuine issue of material fact, summary judgment is not warranted." *Mitchelson v. Travelers Ins. Co.,* 229 Kan. 567, 570, 629 P.2d 143 (1981).

The summary judgment entered for defendant is reversed and the case is remanded for further proceedings.